GEORGE W. MEAD *v.* A. J. LANSDOWNE

**Fixtures—Contract of Conversion—Property Becoming Part of the Freehold. Mines and Mining.**

Under the law of fixtures, it is held that the placing on the premises by the lessee of impliments for the purpose of operating mines thereon, under the contract of lease, would not give the owner of the freehold a claim to the fixtures, when they can be removed without causing material injury to the estate. They remain the unquestionable property of the lessee.

**Injunction—Conversion of Property Under—Liability on Bond.**

On the dissolution of an injunction, personal property can be surrendered by the plaitiff to the defendant; the detention could not be treated as a conversion of them by the plaintiff, he being liable on his bond in consequence of the injunction, to the defendant for any damages sustained by him.

**Contract—Construction—Lease—Fixtures.**

A contract for the lease of a salt mine, amongst others, contained the following clause "Any materials and implements the said Mead may place upon the premises for the manufacture of salt and not counted fixtures, he, Mead shall have the right to remove for his use, unless said Dr. Lansdowne chooses to pay said Mead for the same at a fair valuation." **Held,** that this would not vary the legal signification of the term "fixtures," the impliments being merely erected for the purpose of trade, were subject to removal by the tenant.

APPEAL FROM CARTER CIRCUIT COURT.

May 23, 1868.

OPINION OF THE COURT BY JUDGE HARDIN:

On the 11th day of January, 1862, the parties Lansdowne and Mead entered into a contract whereby the former leased to the latter certain premises described as

"Dr. Lansdowne's salt furnace, with all the appurtenances thereto belonging, together with salt wells sufficient for the manufacture of salt at said furnace and the privilege."

of using coal, &c., in the business of making salt. Also

"the house and premises thereto belonging, known as the said Dr. Lansdowne's new store."

for three years from said date,

'in consideration of the said Mead building a yard fence

around said house and putting it in general good repair. Also to construct a salt furnace for the manufacture of salt at the furnace above described and opening and working such wells as the said Mead may deem most expedient."

The parties further stipulated:

"that if the said Mead at any time abandons the manufacture of salt more than temporarily, he relinquishes all claim to this house, the said Dr. Lansdowne reserves the right to sink a shaft in any of the above wells by giving to said Mead notice of such intention in time that said Mead may in a reasonable time abandon such well, and if at any time the said Dr. Lansdowne sells his farm, he reserves the right to discontinue this lease upon first paying the said Mead for his improvements and the value of his interest in this house, the said Mead returning to said Dr. Lansdowne the above premises together with all kettles and tools that said Dr. Lansdowne may furnish said Mead, in as good order as they are now, and said Dr. Lansdowne to have peacable possession of the same. Any materials and implements the said Mead may place upon the premises for the manufacture of salt and not counted fixtures, he, Mead, shall have the right to remove for his use, unless said Dr. Lansdowne chooses to pay said Mead for the same at a fair valuation."

Under said contract Mead entered into possession of the leased premises and engaged in the manufacture of salt; in the meantime making repairs, and providing salt pans and implements for use in said business in addition to those of Lansdowne, which were on the premises at the date of lease.

On the 14th day of December, 1864, Lansdowne filed a petition in equity against Mead exhibiting their said contract and alleging that the defendant was then about removing from the leased premises a portion of the fixtures pertaining to the freehold, including certain salt pans claimed by the plaintiff as fixtures, and to prevent such removal he sued out an order of injunction by which Mead was inhibited from removing any fixtures, implements, materials, tools or other things used or necessary for the manufacture of salt on said premises or situated thereon or in any wise pertaining thereto, until the further order of the court.

It appears that amongst the articles, the defendant was thus rstrained from removing there were six salt pans and various other implements which he had purchased for use in the manufacture of salt, and which he claimed as his own property, insisting that they were not fixtures, and that he had a right to remove them unless the plaintiff would purchase them, as he might according to the contract, and for the apparent purpose of requiring the plaintiff to elect to purchase them or allow the defendant to remove them, he caused to be served on the plaintiff the following written notice on the 20th day of December, 1864:

"Dr. A. J. Lansdowne:

"Take notice that I expect to remove my pans and other implements unless you see proper to buy them.

"Yours respectfully,
"G. W. Mead." ·

And subsequently Mead filed an answer denying the alleged intention on his part to remove any property which the plaintiff had a right to claim, and controverting the plaintiff's claim, and alleging his ownership to said pans and implements.

In the meantime, Lansdowne brought an ordinary action against Mead for alleged breaches of said contract, in failing to construct a furnace, build a yard fence and repair the premises, according to his undertaking, and for waste and damages occasioned by the conversion or destruction of the property by Lansdowne.

In this action Mead filed an answer controverting the material averment of the petition, and upon a counter-claim against Lansdowne sought to recover against him the value of said salt pans and other property of which the plaintiff acquired possession with the leased premises, by means of the injunction which prevented their removal, and for loss occasioned by the interruption and suspension of defendant's business before the expiration of the lease, by the execution of the injunction.

This action having been transferred to equity, and consolidated with the injunction suit, the two causes were referred to a commissioner to audit the claims of the parties, whose report sustained the claim of Lansdowne to five of the salt pans which had been placed in the furnace and used by Mead in said business, and stated the account between the parties as follows:

"Plaintiff's claim:

| | |
|---|---:|
| To not having house in repair ................ | $102.00 |
| To fence around house ..................... | 25.00 |
| To 1 Hydrometer ........................ | 1.50 |
| | $128.50 |

"To be credited by:

| | |
|---|---:|
| Amount in Schedule, Ky. .................. | $66.50 |
| Amount of one broken salt pan, 1300 lbs., at 2½. | 33.75 |
| | $100.25 |

Showing a balance of $28.25 in favor of Lansdowne after allowing Mead credit by the broken salt pan, not used, and certain tools and implements, withheld under the injunction which in the opinion of the commissioner did not belong to Lansdowne under the contract.

In April, 1866, the court, on exceptions of both parties, to the commissioner's report, adjudged in substance as follows:

1. With respect to the salt pans, that the contract did not vary the legal signification of the term "fixtures" by which machinery attached, as the salt pans were, did not vest in the landlord on the determination of the lease, but being merely erected for the purposes of trade, were subject to removal by the tenant. But the plaintiff then offering in court to relinquish the possession of the pans to Mead, the court allowed him to do so, and refused to charge him with the value of the pans as proved at the time they came to his possession.

2. The court held Mead chargeable with $30 for the value of certain iron rods converted into laths for his use on the ground that the rods belonged to Lansdowne.

3. The court further adjudged that instead of the sum of $128.50 (including $1.50 for a hydrometer) as allowed to Lansodwne by the commissioner for the failure to make the fence and repair the house, the defendant should be charged $225 for such failure, besides the item of $1.50, and thus fixing the amount of charges against the defendant at $256.50, and allowing him credit by $66.50 as fixed by the commissioner; the court rendered a judgment against Mead for $190, and for three-fourths of the costs, and discharged said injunction. And from this judgment

Mead has appealed to this court, and Lansdowne also seeks a reversal by cross appeal.

Before disposing of the questions raised, as to Mead's right to remove the salt pans and implements claimed by Lansdowne as fixtures, we will examine the judgment so far as it modifies the statement of account between the parties, made by the commissioner.

It seems to us the adjustment reported by the commissioner showing a balance of $28.25 in favor of Lansdowne, was as favorable to him as should have been adjudged by the court. The additional charge of $30 for iron rods seems not to have been authorized by the evidence, but on the contrary, it appears that the rods were Mead's own property, and never belonged to Lansdowne.

And the sums charged to Mead by the commissioner amounting to $127 for failing to repair the house and fence, ought not, from the evidence, to have been increased by the court; the balance in favor of Lansdowne, on the adjustment of these accounts, should therefore have been $28.25, as reported by the commissioner, instead of $190 as adjudged by the court.

We concur with the court below that the contract did not alter the rights of the parties with respect to the salt pans and implements under the law of fixtures, and whether Mead had a right to remove them or not, depends on the solution of the question whether considering the purpose for which they were used and other circumstances attending their annexation to the premises, the property in them remained in Mead, or became vested in the owner of the freehold. And as it appears that they were placed on the premises by Mead, to be used in the business or trade of making salt, and might be removed without causing material injury to the estate, the continuance of Mead's property in them, and his right to remove them, were unquestionable. (Ferard's Law of Fixtures, 48.) It seems to us, also, that the court did err in allowing Lansdowne to elect to surrender the possession of the five salt pans to Mead, upon the dissolution of his injunction. He being liable on the injunction bond for the damages sustained by Mead in consequence of the injunction, no injustice was done to Mead, by the refusal of the court to treat the detention of the pans under the injunction as a conversion of them by Lansdowne. If Mead has

sustained loss in consequence of the wrongful suing' out of the injunction, he has his remedy by an action on the bond.

Both parties have complained of the judgment on other grounds than those we have considered, but 'we have failed to perceive any substantial error not already indicated.

But for the errors suggested, the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

And on the cross appeal the judgment is affirmed.

*Ireland, for appellant.*

*James and Rise & Dulin, for appellee.*