WAVERLY PARK AMUSEMENT CO. *v.* MICHIGAN UNITED TRACTION CO.

1. LANDLORD AND TENANT—TRADE FIXTURES—REMOVAL.

A tenant has a right to remove trade fixtures, but he must do so while still in possession under his lease, unless the time for doing so has been extended.

2. SAME.

A tenant need not remove his trade fixtures so long as he has a right to occupy the premises with the same, and if he puts up trade fixtures under his first lease and then obtains the right to continue in possession under subse-

quent leases, making his occupancy continuous, he need not take his fixtures away until his tenancy ends.

3. TRADE FIXTURES—WHAT CONSTITUTES.

To constitute any chattel that has been attached to the freehold a trade fixture, it is only necessary that it be devoted to what is known in the law of fixtures as a trade purpose.

4. LANDLORD AND TENANT—TRADE FIXTURES—RIGHT OF TENANT TO SELL.

Where trade fixtures were placed on the premises during the term of the lease by a tenant and he continued in possession as sublessee under a lease from the successor to the lessor he did not lose his right to the fixtures, and he could sell them during the second term.[1]

5. SAME—TRADE FIXTURES—RIGHT TO PURCHASE OF SUBLESSEE.

A lessee may purchase trade fixtures or amusement devices from a sublessee under a prior lease.

Appeal from Ingham; Wiest, J. Submitted January 5, 1917. (Docket No. 39.) Decided July 26, 1917.

Bill by the Waverly Park Amusement Company against the Michigan United Traction Company to restrain defendant from interfering with plaintiff's leasehold rights. From a decree for plaintiff, defendant appeals. Affirmed.

*William K. Sagendorph,* for plaintiff.

*Sanford W. Ladd* (*Charles E. Lewis* and *Warren, Cady, Ladd & Hill,* of counsel), for defendant.

STONE, J. This is an injunction bill, praying that defendant be restrained from destroying, removing, or interfering in any way with the property or rights of plaintiff, or shutting off or interfering with its supply of electricity, or interfering with its rights under a

---

[1] Authorities passing on the question of effect of renewing tenancy without reserving right to remove trade fixtures are collated in notes 1 L. R. A. (N. S.) 1193; 17 L. R. A. (N. S.) 1135; 48 L. R. A. (N. S.) 294.

certain contract of lease between the Michigan United
Railways Company and the plaintiff, referred to in the
bill of complaint. A temporary injunction was granted,
and later upon final hearing of the issue, upon plead-
ings and proofs in open court, the temporary injunc-
tion was made permanent, subject to the terms of the
lease under which plaintiff held, with costs to the plain-
tiff. It appears that the contract between the parties
has now expired by limitation, leaving only the ques-
tion of costs and of the right of plaintiff to file the bill
in the first instance. A careful consideration of the
record and arguments of counsel has led us to the con-
clusion that the learned trial judge who heard the case
made a proper disposition of it and of the questions
involved. He filed a written opinion, which so fully
and so clearly covers the issues that we here insert it,
with our approval. It is as follows:

"The contract rights of the Waverly Park Amuse-
ment Company appear in the lease made to it by the
Michigan United Railways Company on the 28th day
of March, 1907.

"That lease granted to the complainant such part of
the premises described in the lease 'as are necessary
and occupied with its figure eight roller coaster, and
such other amusements which it has, or shall erect on
said premises. * * * And party of the second part
does hereby hire the said premises for the seasons of
1909, 1910, 1911, 1912, 1913, 1914, 1915, 1916, for the
purpose of building, owning and operating a figure
eight roller coaster and other amusement devices.

" 'Party of the first part further agrees to furnish
to the said party of the second part all the electrical
current necessary for the purpose of operating and
lighting the said amusement devices, including the
figure eight roller coaster, which the said second party
shall operate,' at a rate stipulated in the lease.

" 'That the said figure eight roller coaster and other
amusement devices which may be erected by the said
party of the second part on the premises, * * *
shall remain and be the property of the said party of

the second part and shall in no wise become attached or part of the premises heretofore described, or the property of the said party of the first part.'

"The lease between the Michigan United Railways Company and H. Pearl French and Millard Densmore, dated April 17, 1908, was a letting to them from January, 1909, to January 1, 1910, of the premises in question subject to the rights of the Waverly Park Amusement Company under its lease. This lease was in effect renewed by new leases of the Michigan United Railways Company and its grantee, the Michigan United Traction Company, giving Mr. French the right of occupancy and use of the premises for his amusement devices and fixtures up to the 1st day of January, 1913. Up to the 1st day of January, 1913, there was no occasion for Mr. French to remove his trade fixtures unless he intended to surrender the possession of the premises, and that he did not intend to surrender possession is conclusively shown by the fact that he retained possession under a lease for the year 1913 from the Michigan Catering Company. During the season of 1913, the Waverly Park Amusement Company owned and operated only the roller coaster. Mr. French operated the amusement places owned by him at the park, during the season of 1913 under a lease from the Michigan Catering Company, a lessee of the Michigan United Traction Company, and in September, 1913, Mr. French sold his trade fixtures or places of amusement to the Waverly Park Amusement Company.

"The law is well settled in this State that a tenant has a right to remove trade fixtures, but he must do so while still in possession under his lease, unless the time for doing so has been extended.

"The law is equally well settled that the tenant need not remove his trade fixtures so long as he has a right to occupy the premises with the same, and that if he puts up trade fixtures under his first lease, and then obtains the right to continue in possession under subsequent leases, making his occupancy continuous, he need not take his fixtures away until his tenancy ends.

"The rule is different in some of the States, but Michigan does not hold that trade fixtures pass to the landlord or become a part of the realty until the lessee

surrenders his right of occupancy, and if that right does not end with one lease, but is continued under renewals by way of new leases, having practically the same kind of tenancy in view, he may wait until his agreed use of such fixtures is near an end and remove his fixtures at any time before the expiration of his leased right of occupancy.

"Under the evidence Mr. French had a right of occupancy of the premises during the season of 1913; in fact, his occupancy under lease had been continuous from the 1st day of January, 1909, and under its lease to the Michigan Catering Company the defendant had granted that company the right to grant Mr. French the possession he held until the 1st day of January, 1914.

"The buildings erected were not fixtures, when erected, and the question is whether they became fixtures by reason of nonremoval. Instead of removing the trade fixtures during his term Mr. French sold the same to the complainant. It has been held that the tenant's right to remove fixtures continues during his original term, and during such further period of possession by him as he holds the premises under a right to consider himself tenant. *Kerr* v. *Kingsbury*, 39 Mich. 150 (33 Am. Rep. 362).

" 'To constitute any chattel that has been attached to the freehold a trade fixture, it is only necessary that it be devoted to what is known in the law of fixtures as a trade purpose. * * *

" 'The form or size of the annexed chattel is immaterial; large buildings, such as stores, barns and ice houses, * * * have been held trade fixtures.' Bronson on Fixtures, p. 186.

"Mr. French never lost his right to his trade fixtures up to the time he sold them, and at that time he had a right to sell the same.

"The Waverly Park Amusement Company, under its lease might have built all of the structures in question and have owned and operated them.

"Defendant claims that complainant could not buy erected structures upon the premises, and can only erect structures. This would lead to an absurdity, for complainant might, even under defendant's contention, have bought the buildings, taken them down, and at

once rebuilt them and have the same protected under the lease.

"Under the lease of the complainant, it matters not how such places of amusement have come upon the premises so long as they are not the property of the defendant, for the lease expressly permits added places to occupy the premises, and defendant under its lease gets its stipulated per cent. of the gross receipts of the same.

"I am aware of the peculiar terms of the lease granted to Mr. French by the Michigan Catering Company, but, having in view all of the circumstances surrounding the making of such lease, I am of the opinion that it was in effect a continuation of the occupancy theretofore granted Mr. French by the Michigan United Traction Company.

"I am unable to find that Mr. French at any time surrendered his fixtures to the defendant, or that he lost his right of occupancy, so that such fixtures attached to the realty, and unless such fixtures passed from the ownership of Mr. French to the defendant, the Michigan Catering Company could not lease the same to Mr. French.

"Construing this lease between the Michigan Catering Company and Mr. French, in view of all the circumstances, having in mind that Mr. French never lost his right to his fixtures, the court is compelled to hold that this lease does not estop Mr. French from asserting his ownership of the fixtures up to the time he made the sale to the complainant.

"The trade fixtures did not pass to defendant by reason of Mr. French's taking a lease of the same from the Michigan Catering Company. Such lease could not, by implication, pass title to the fixtures, and the ownership must be determined independent of such lease. If there had been some evidence of surrender of the fixtures to the landlord, then such lease by Mr. French would constitute pretty conclusive evidence against French, but in the face of the evidence of continuous possession and of nonsurrender, the lease does not establish ownership in defendant.

"It follows that the trade fixtures never became attached to the realty, and have not passed to the landlord, and defendant at this time has no right to inter-

197—Mich.—7.

fere with the same, and such fixtures have passed to complainant with the right of occupancy of the premises, and of the use of the same thereon during its tenancy.

"Defendant denies that it has had anything to do with the removal of the buildings taken away, or with shutting off the stipulated supply of electrical current.

"Its lease to complainant affords complainant the right of quiet and peaceable possession as against any act of the defendant, and it is fair to assume that if defendant's lessee, the Michigan Catering Company, asserts the right to remove the buildings, it is by reason of the claim made here by the defendant that the Michigan Catering Company should have been made a party defendant in this case, in order to afford the complainant all the relief necessary, but the complainant is entitled to relief as against the defendant.

"Let the defendant be restrained from tearing down or removing the trade fixtures in dispute, and let the temporary injunction herein be made permanent. Subject, however, to all the terms of the lease under which complainant holds and as herein determined by the court."

In addition to the authorities cited by the circuit judge we add the following cases in this court: *Osborn* v. *Potter*, 101 Mich. 300 (59 N. W. 606); *Hayward* v. *School District*, 139 Mich. 539 (102 N. W. 999); *Higginbotham* v. *Phillips*, 192 Mich. 49 (158 N. W. 130).

In our opinion *Kerr* v. *Kingsbury*, *supra*, and these cases are decisive of the instant case.

We have examined the numerous Michigan cases cited by defendant's counsel, but do not think them controlling here, as the facts therein are readily distinguished from the facts in the instant case. As we understand defendant's position, it is that plaintiff not only had no title to the buildings and improvements in question, but that the lease of March 28, 1907, gave it no right to occupy them, or the premises on which they stood, and that defendant, as the successor of the Michigan United Railways Company, was entirely within

its rights in ridding the park property of the buildings and improvements in question. And, further, that it claims that in each instance the buildings or structures became a part of the realty when erected, and that title passed absolutely to the owner of the soil, at the termination of the leases, under which they were erected, the buildings and structures not having been removed by the respective tenants. In our opinion these claims are not tenable. That the lease of March 28, 1907, gave plaintiff the right to occupy that part of the park upon which the structures in question stand there can, we think, be no question. We think, also, that these structures did not become a part of the realty, but were treated and considered as chattels, and that the evidence shows that before the termination of the lease under which Mr. French operated, he sold and transferred the property embraced in his bill of sale of September 23, 1913, to the plaintiff, and the latter continued in possession.

Much importance is attached by defendant to what is termed lapses in the several leases. It should, however, be borne in mind that Mr. French, or the plaintiff, continued in possession of the property, their rights therein were recognized, and not questioned by defendant; but, on the other hand, on January 27, 1914, inquiry was made by defendant of Mr. French as to the lowest possible amount he would accept for the property owned by him at Waverly Park. And on April 6, 1914, he was formally requested to remove from the premises "all buildings, materials and structures belonging to you on said premises, on or before May 1, 1914." The chief importance which we attach to these acts is the understanding of the defendant as to whether the structures had become the property of the owner of the soil. We think that the finding of the circuit judge as to the continuous possession of Mr. French from the 1st day of January, 1909, and that

"under its lease to the Michigan Catering Company, the defendant had granted that company the right to grant to Mr. French the possession he held until the 1st day of January, 1914," was fully warranted by the evidence. The following language quoted from *Kerr* v. *Kingsbury*, is, we think, pertinent here:

"But why the right should be lost when the tenant, instead of surrendering possession, takes a renewal of his lease is not very apparent. There is certainly no reason of public policy to sustain such a doctrine; on the contrary, the reasons which saved to the tenant his right to fixtures in the first place are equally influential to save to him on a renewal what was unquestionably his before. What could possibly be more absurd than a rule of law which should, in effect, say to the tenant who is about to obtain a renewal:

"'If you will be at the expense and trouble, and incur the loss of removing your erections during the term, and of afterwards bringing them back again, they shall be yours; otherwise you will be deemed to abandon them to your landlord.'"

We are of the opinion that the decree of the circuit court was right, and it is therefore affirmed, with costs to the plaintiff.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.