## Cohen, et al. v. Reif, et al.

(Decided March 16, 1928.)

### Appeal from Campbell Circuit Court.

1. Waste.—Modern action for waste is in nature of an action on the case, and is an action ex delicto.
2. Landlord and Tenant.—Where lease contains an express covenant to yield up premises in good condition at end of term, landlord has option of suing on covenant or bringing proper action to recover directly for waste.
3. Landlord and Tenant.—While, under the Code, there is but one form of action, distinctions between actions ex contractu and ex delicto are not obliterated, and lessors had right to bring action at law for breach of covenant to surrender premises in as good order as received, or thereafter put by lessor, ordinary wear and tear excepted.
4. Limitation of Actions.—Where lessees surrendered premises on August 31, 1922, suit for breach of agreement to yield up premises in good condition, brought in March 1923, was not barred, since right of action did not begin to run until expiration of lease.
5. Landlord and Tenant.—Under lease of theater building, providing that lessees were to deliver up premises at end of term in as good order and condition as they were put by lessors, reasonable use and ordinary wear excepted, it was duty of lessees to surrender building with marble wainscoting, tile flooring, plastering, cement floor, plumbing fixtures, and locks and other hardware in good condition, ordinary wear and tear excepted.

6. Landlord and Tenant.—Under lease of theater building providing that lessees, at expiration of term, were to deliver up premises in as good condition as they were or might be put by lessors, reasonable use and ordinary wear excepted, it was duty of lessees to return walls in clean condition, ordinary wear and tear excepted, and lessors were entitled to damages for expenses in cleaning walls, and lessees could not complain, where jury allowed lessors $1,000 out of larger bill paid for painting and decorating; such damages being no more than necessary to clean walls.

7. Landlord and Tenant.—Under lease of theater building providing that, at expiration of term, lessees were to deliver up premises in as good condition as they were or might be put by lessors, reasonable use and ordinary wear excepted, where lessees had closed building for considerable period, and water had accumulated in electrical conduits, rotting insulation and requiring rewiring, and switchboard on stage had been stripped of switches, copper, and other devices, all of which had been installed by lessors, lessors were entitled to damages for such items, since lessees were responsible for their restoration, subject to ordinary wear and tear.

8. Landlord and Tenant.—Under lease of theater building providing that lessees were to deliver premises at expiration of term in as good condition as they were or might be put by lessors, ordinary wear and tear excepted, lessees were under no duty to restore lighting fixtures and globes installed by them.

9. Landlord and Tenant.—Where lessees had right to remove railing around orchestra pit in theater as trade fixture, lessors could not recover its value in action for breach of covenant to surrender premises in good condition, though ownership of railing finally rested in plaintiffs through conveyance and gift.

10. Fixtures.—Brass railing around orchestra pit in theater building, installed by lessees, was trade fixture, which they had right to remove on termination of their lease, and lessors could not recover value in suit for breach of covenant to deliver up premises in good condition, ordinary wear and tear excepted.

11. Appeal and Error.—In action by lessors for breach of covenant to deliver up theater building in as good condition as it was or might be put by lessors, ordinary wear and tear excepted, where jury erroneously allowed lessors for small item, consisting of orchestra pit railing, which lessees had right to remove, judgment would not be reversed, but would be credited by such amount.

12. Landlord and Tenant.—Where C. and others, styling themselves "W. estate," leased theater building to C. and others, question, in action by lessors for breach of covenant to deliver up premises in good repair, whether C. had taken over the control of boiler after lessees closed building, which boiler was damaged at termination of lease, in his capacity as lessee, and not for W. estate, held for jury.

13. Landlord and Tenant.—In action for breach of covenant of lease to deliver up premises in as good order and condition as they were

or might be put by lessors, instruction that it was defendants' duty to surrender premises in as good order as received, or as they were put by defendants, held erroneous.

14. **Appeal and Error.**—In action for breach of covenant to deliver up premises in as good order and condition as they were or might be put by lessors, instruction that it was lessees' duty to surrender premises in as good order as received or as put by lessees held not prejudicial error, where all claims made by plaintiffs and allowed by jury with one exception had to do only with condition in which premises had been received, or were thereafter put by lessors.

WM. A. BURKAMP and FOWLER, WALLACE & FOWLER for appellants.

C. W. YUNGBLUT, FRANK V. BENTON and L. W. SCOTT for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In August, 1911, Clarence Wagner, his mother, Emma Wagner, and his sisters, the appellees Alma Reif and Elsie Barr, were the owners of a vacant lot of ground located in the city of Newport, Ky. They styled themselves the A. Wagner, Jr., estate. Clarence Wagner seems to have been the manager of this estate. On August 7, 1911, the Wagner estate, by Clarence Wagner, leased the premises in question to A. E. Cohen, Theodore Kotzin, who are the appellants herein, and himself. The lease by its terms was to run ten years from the completion of a theater building which was to be erected by the lessors on the demised premises. It is conceded that this lease expired on August 31, 1922. By the terms of the lease, the lessees were to keep the property in good repair upon the interior at their expense, were to restore at their expense all broken glass in the doors and windows, and, at the expiration of the term were to deliver up the premises "in as good order and condition as they now are or may be put by said lessors, reasonable use and ordinary wear and tear thereof and damage by fire and other unavoidable casualty excepted." The lease further gave the lessees the privilege to sublet the property and to improve it, providing that the improvements proposed would not in any manner injure, impair, or disfigure the premises.

A theater for moving pictures was erected by the lessors and the lessees took possession of it. The latter

organized a corporation known as the Kozy Theater Company, to which they sublet the leased premises, and this theater company ran the picture showhouse until the year 1916, when it assigned its sublease to Isaac Frankel, who operated a number of other picture showhouses in the neighborhood.   Clarence Wagner died intestate in the year 1919, and his mother, who was his only heir and distributee at law, sold the capital stock of her son in the Kozy Theater Company to the appellants. The Kozy Theater Company in turn sold to Mrs. Wagner all the personal property which it owned and had installed in the moving picture house above mentioned.   Later Mrs. Wagner conveyed this personal property to the appellees, and likewise deeded to them her interest in the realty on which the moving picture house was located, as well as the interest of her son, Clarence Wagner, which she had inherited, in that property.   Conceiving it to be for the best interest of his other showhouses, Frankel closed the picture showhouse located on the Wagner property in the year 1918, and it remained closed until the lease expired in 1922.

When the property was surrendered in 1922 to the appellees, they claimed that it was in a deplorable state of disrepair, and they thereupon brought suit against the appellants to recover on that covenant in the lease requiring the lessees to return the property on the expiration of the lease in as good order and condition as received by the lessees or thereafter put by the lessors, reasonable use and ordinary wear and tear excepted. The petition as amended set out in detail the condition of the premises of which complaint was made. The answer was a traverse and a plea of the one-year statute of limitations.   The amended answer pleaded the five-year statute of limitations.   Before the case came on to be tried, appellants made a motion to transfer it to equity.   This motion is found on page 45 of the record. The appellants state in their brief that this motion was overruled, and cite us to page 21 of the record, whereon they say this motion and order may be found.   We have not been able to find any such order on that page or any other page in the record, and, so far as we are able to determine, this motion seems never to have been disposed of by the circuit court.   But, as we view this case, even though the motion was overruled by the court, no error was committed, as we shall presently see.   On the trial, the jury awarded the appellees a verdict itemizing

each item of damages and aggregating the amount of $2,186.97. From the judgment entered on that verdict, this appeal is prosecuted.

Of the grounds for reversal urged by appellants, we may group for consideration their complaints that their motion to transfer to equity and their motion for a peremptory instruction should each have been sustained. The theory of the appellants in this connection is that this action was really an action for waste; that the waste complained of was permissive, and not voluntary; that an action at law does not lie for permissive waste, the sole remedy being in equity; and that, further, this being an action for waste, it was at least barred by the five-year statute of limitations. The fundamental error into which the appellants have fallen is their conception that this is an action for waste. The modern action for waste is in the nature of an action on the case, and is an action ex delicto. But, where the lease contains an express covenant to yield up the premises in good condition at the end of the term, the landlord has the option of suing on such covenant or of bringing the proper action to recover directly for the waste. Tiffany on Landlord and Tenant, page 726. In 36 C. J. 202, it is said that the action for the breach of such a covenant is an action upon the covenant, and not an action in tort. In Brashear v. Chandler, 6 T. B. Mon. 150, where recovery was sought for a breach of such a covenant, the action was in covenant.

While, under the Code, there is but one form of action, the distinction between actions ex contractu and ex delicto is not obliterated. One has but to read the chapter of the Code dealing with "joinder of actions" to realize this. The appellees then had the right to bring this action at law for the breach of the covenant in question. It was so held in the Brashear case, supra. Such an action was not one for waste, but an action for a breach of the agreement to surrender the premises in as good order as received or thereafter put by the lessor, ordinary wear and tear excepted. We have been unable to find anything in the cases of Fisher's Ex'r v. Haney, 180 Ky. 257, 202 S. W. 495, and Continental Fuel Co. v. Haden, 182 Ky. 8, 206 S. W. 8, relied on by appellants which is in conflict with these views. In the first case, the action was brought for waste. The second was an action to forfeit the lease and to recover for waste com-

mitted. Neither case was an action on a contract to yield up the premises in good repair.

From these considerations, it also follows that the plea of limitations was also unavailing. The right of action, in this case, since the injuries to the premises complained of were such as could be repaired, did not begin to run until the expiration of the lease, for there was no breach of the agreement to yield up the premises in good condition until such premises were surrendered. Tiffany on Landlord and Tenant, p. 781, 36 C. J. 199. The premises were surrendered on August 31, 1922. This suit was brought in March, 1923. It was in time.

As to the condition of the premises when they were surrendered, there was a conflict of evidence as to most of the particulars complained of, but the jury was well warranted in finding the issue on these matters in favor of the appellees. The appellants do not seriously contend that the evidence does not show that some marble wainscoting was broken; that the tile flooring in the lobby had to be treated with acid in order to be cleansed; that some plastering has been knocked out; that a part of a cement floor had been broken; that plumbing fixtures had been stolen from the premises, leaving the plumbing in a very bad condition; and that some locks and other hardware had to be replaced. The evidence shows that all these things had been put upon the premises originally by the lessors, and it was the duty of the lessees to surrender them in good condition, ordinary wear and tear excepted. As to the items of painting, electrical work, brass railing, and boiler, though, the appellants do make emphatic complaint. First with regard to the painting.

The record shows that, when this building was delivered to the lessees, the latter painted and decorated the walls with various figures and other devices. During the years the building lay idle some windows at the top of the walls were allowed to remain open. The rain came in these windows and ran down the walls, causing great streaks where dust had accumulated. Children had also broken into the building, and had squirted the contents of the fire extinguishers all over the walls and the seats in the building. The lessors, on regaining possession of the property, had these walls cleaned and revarnished. The jury only allowed the lessors the sum of $1,000 out of a larger bill paid for painting and redecorating. The lessors would have been compelled to do the cleaning

they did, although the walls had not been decorated by the lessees. The lessors did not repaint the figures and devices on the walls, but only cleaned them. They would have had to clean the walls, even though no decorations had been put upon them. It was the duty of the lessees to return the walls in a clean condition, ordinary wear and tear excepted, and, as the damages allowed on this score were no more than necessary to clean the walls, and did not include anything for redecorating them, the lessees cannot complain.

The next item is "electrical work." The evidence shows very clearly that, due to the building being closed for so long a period of time, water had accumulated in the electrical conduits, rotting the insulation, and requiring a good deal of rewiring, and that the switchboard on the stage had been stripped of its switches, copper, and other devices by thieves. As all this had been installed by the lessors, the lessees were responsible for its restoration, subject to ordinary wear and tear. A claim, however, was made for lighting fixtures and lighting globes installed by the lessees. The latter were under no duty to restore these fixtures and globes under their covenant. However, the amount awarded by the jury for this electrical item excluded any damages for these fixtures and globes, so that the lessees may not complain of this item.

The next item is "brass railing." This railing ran around the orchestra pit. It was installed by the lessees, and was undoubtedly a trade fixture, which they had a right to remove on the termination of their lease. Though the ownership of this brass railing finally vested in the appellees under the conveyance of the personal property in the theater by the Kozy Theater Company to appellee's mother and her gift of such property to them, yet they were not suing for its conversion. This suit rests entirely on the lessees' covenant to surrender the premises in as good condition as received or thereafter put by the *lessors,* ordinary wear and tear excepted, and the failure to turn over in good condition this brass railing installed by the lessees was no breach of this agreement. Though a recovery was allowed for this brass railing, yet, as the jury awarded the appellees only $25 for it, the judgment will not be reversed for the erroneous allowance of this small item. Malone v. Keith, 205 Ky. 711, 266 S. W. 381; Kappa v. Brewer, 207 Ky. 61, 268 S. W. 831. The judgment, however, will be credited by it.

The last item was for a boiler. The evidence shows that two sections of the boiler which had been installed by the lessors for the purpose of furnishing heat to this building had burst, due to the fact that it had not been drained, but had been allowed to stand with water in it during alternate periods of hot and cold weather. It is insisted, though, that in the year 1916 the custody of this boiler was taken over by Clarence Wagner for the purpose of heating other buildings belonging to the Wagner estate and located near this showhouse. Although the appellants did show that Clarence Wagner took over the control of this boiler from the Frankels in 1916, yet they failed to show for what purpose he did so, or that he took it over for the Wagner estate. It must not be forgotten that not only was Clarence Wagner one of the original lessees, but he was also a stockholder in the Kozy Theater Company. He may have taken over the control of this boiler in his capacity as lessee or for the Kozy Theater Company and not for the Wagner estate. That this is highly probable is disclosed by the fact that we find Frankel again in control of this boiler in the latter part of 1917 and 1918. It is true Frankel says that the boiler was then burst when he again took control of it, but, if the appellants wished to escape any responsibility for the condition of this boiler when they surrendered it to the appellees, it was their duty to show that Clarence Wagner had taken control of it in 1916 for the lessors. This they failed to do. It results that the court did not err in submitting this issue to the jury.

Two other contentions are made for reversal. One is an alleged lack of proper parties. But the estate of Clarence Wagner was made a party to this suit, as appellants contend should have been done, and judgment ran against it as well as the appellants.

The other contention is that there was error in the instructions. In submitting this case, the court told the jury, in substance, that it was the duty of the defendants (lessees and now appellants) to surrender the demised premises in as good order as received or as was put by "the defendants." This instruction was erroneous, because under the lease it was their duty to return it only in as good condition as received, or as put by the lessors. The error, however, was not prejudicial, since all the claims made by the appellees and allowed by the jury, with the exception of the brass rail, had to do only with the condition in which the premises had been received or

thereafter put by the lessors. The lessees, therefore, were not prejudiced by this error in the instructions, except as to the brass railing, and, as heretofore stated, the judgment will be credited by the amount awarded for this railing.

The judgment of the lower court is therefore modified by crediting it with the sum of $25, and, as so credited, it is affirmed.