## Doll v. Guthrie.

(Decided December 20, 1929.)

(As Modified, on Denial of Rehearing, March 11, 1930.)

J. C. CLOYD for appellant.

E. N. FULTON for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Affirming.

On October 31, 1927, the appellant and appellee entered into a written contract by which certain apartment buildings situate in the city of Louisville, belonging to the former, were exchanged for a farm in Nelson County, Ky., belonging to the latter. Appellant was placed in the possession of the farm in December, 1927, and on December 15, 1927, at an auction sale of personal

property by appellee, he purchased certain farming implements and other personal property for which he executed his promissory note for the sum of $1,626.90, due six months after date. This suit was instituted August 4, 1928, to recover on that note. Appellant by way of counterclaim asserted that, at the time of the exchange of property between appellee and himself, he had in the apartment buildings 24 beds of the value of $1,560 and linoleum on floors, window blinds and curtain rods attached to the windows, of the value of $1,250, which it was alleged appellee converted to his own use, against the will and without the consent of appellant, and for the value of which he sought judgment over against appellee. By reply appellee pleaded that the beds, linoleum, window blinds, and curtain rods were in the apartments at the time of the conveyance of the property to him, were attached to the buildings, were a part thereof, and were a part of the consideration moving between the parties, and were placed in his possession when deed for the property was delivered to him. A rejoinder traversing this reply completed the issue. A trial before a jury resulted in a verdict in favor of appellee for the amount of note sued on, and, from the judgment thereon, this appeal is prosecuted.

A number of grounds are urged by appellant for a reversal of the judgment, but a discussion of each of them would extend this opinion to too great length. The controlling question—the only real question—in this case is: Were the beds, linoleums, window shades, and curtain rods, fixtures, and did they pass with the realty as a part thereof?

In 11 R. C. L. 1059 it is said:

"The tests to be applied in determining the question whether an article used in connection with realty is to be considered a fixture, or not, have even less of definiteness than an attempting statement of a definition as to what constitutes a fixture. The general course of modern decisions, in both English and American courts, is against the common law doctrine that the mode of annexation is the criterion, whether slight and temporary, or immovable and permanent, and in favor of declaring all things to be fixtures which are attached to the realty with a view of the purposes for which it is held or employed.

This has led to the formulation and recognition of three general tests which may be applied in determining a particular case, namely, first, annexation to the realty, either actual or constructive; second, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and third, intention to make the article a permanent accession to the freehold.''

In the same volume, at pages 1061 and 1062, it is said:

''The second test, namely, the adaption or application to the use or purpose of that part of the property with which it is connected, is generally considered as entitled to much weight, especially in connection with the criterion of intention, which is more particularly discussed in the next paragraph; the tendency being to regard everything as a fixture which has been attached to realty with a view to the purposes for which the realty is held or employed, however slight or temporary the connection between them.

''The third test stated, the intention of the party making the annexation, has been said by some of the authorities to be a controlling consideration, and generally it is held to be the chief test. It is not always determinative, but in cases of doubt it has a controlling influence. To have this effect, the intention to make an article a permanent accession to the realty must affirmatively and plainly appear, and if the matter is left in doubt and uncertainty the legal qualities of the article are not changed, and it must be deemed a chattel. But the test of intention is to be given a broad and comprehensive signification. It does not merely imply the secret action of the mind of the owner of the property, nor need it be expressed in words, but is to be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made; which, obviously, suggests that the other tests are really part of this comprehensive test of intention, and that they derive their chief value as conspicuous evidence of such intention.''

In the case of Hill v. Mundy, 89 Ky. 36, 11 S. W. 956, 11 Ky. Law Rep. 248, 4 L. R. A. 674, this court said:

"Much research and learning has been expended in endeavoring to establish fixed rules by which to determine whether or not a thing is a fixture. The ancient law made it depend alone upon whether it was in fact so annexed to the realty that it could not be removed without injury to the freehold. This rule has been enlarged with the increase of varying business interests, and the present current of authority is opposed to any arbitrary or unyielding rule upon the subject. Several tests are to be regarded, each more or less, according to the circumstances of the particular case. There are the real or constructive annexation of the article to the freehold; the relation the parties in interest bear to each other, as landlord and tenant, vendor and vendee, etc.; the character of the article; the use which may be made of it, as to the realty with which it is connected; and the intention of the owner as to its use. The latter is of controlling importance in determining the question."

In that case the article in question was a large quantity of ice stored in an icehouse on the premises sold by Hill to Mundy. Nothing was said between the parties during the negotiation of the trade, nor in the deed, nor when possession was given to the vendee, as to the ice; nor was there any reservation by the vendor of the right to enter upon the premises and use or remove the ice. But shortly after the sale of the property Hill claimed the ice, and, upon Mrs. Mundy's refusal to permit him to remove it, sued to recover its possession. In denying him the right to recover, the court said:

"As between vendor and vendee, the law leans to the latter (1 Pars. Cont. 431) and he may be entitled to an article as a fixture, although it is not permanently annexed to the realty. We do not, of course, mean that annexation to the freehold is not to be regarded, where it exists, but it is only one of several tests to be applied, according to the existing circumstances.

"If it be evident that the article would not have been placed upon the freehold, except with the expectation and intention that it should be enjoyed

in connection with the right to the enjoyment of the realty, then it may be regarded as constructively annexed to it, and the fact is to be regarded in determining the character of, the article, whether chattel or fixture. If it have a special adaptation to the use to which the freehold is being applied, and its removal would seriously impair its value, then such an intention may fairly be inferred as to constructively connect it with the freehold, and the business for which it is being used.''

Continuing the opinion, the court said:

"Turning from this general notice of the law of fixtures to the case in hand, we find that the property sold was an hotel for the use of which ice is almost, if not quite, indispensable. . . . Under these circumstances, it is not only reasonable to conclude that it (the ice) was stored there to be enjoyed and used by those who might have the right to use and enjoy the freehold, and was therefore a part of it by the intention as to its use and enjoyment, but that the parties to the sale expected and understood at the time of the purchase that it would pass with the premises and by the conveyance.''

It will be noted from the above excerpts that one of the criteria by which it is determined whether an article is a fixture or not turns on the annexation of the article to the freehold, and that such annexation may be real or constructive. As to constructive annexation, Ewell, in his classic work on "Fixtures," at page 33, says: "With regard to the subject of constructive annexation, it is easier to furnish examples than to give an accurate definition of the term. Thus, the keys, doors, windows, etc., of a house, although they are in one sense distinct things, yet are a part of the freehold, and accordingly they go to the heir as part of the inheritance, and pass by a conveyance or devise of the house. . . . In order to constitute a constructive annexation to the realty, the article in question, although not physically connected therewith, must not only be appropriated or adapted, and accessory to the fit and beneficial use of the principal thing, the realty, and not to a matter of a mere personal nature, but must also be such as goes to complete the building, machinery, etc., constituting the principal thing which is affixed to the land, and must be such as, if

removed, would leave the principal thing incomplete and unfit for use, and would not itself alone be equally useful and adapted for general use elsewhere. In respect to all cases of constructive annexation, there exist both adaptation to the enjoyment of the land and localization in use, as obvious elements of distinction from mere chattels personal.''

The foregoing was written in 1876. The rule as thus laid down in Ewell has been liberalized by the trend of modern authority. In the case of Roderick v. Sanborn, 106 Me. 159, 76 A. 263, 264, 30 L. R. A. (N. S.) 1189, 20 Ann. Cas. 469, in deciding whether storm windows and storm doors, which at the time of the sale of the house to which they were appurtenant were stored in a barn for the summer months, were fixtures or not, and in holding that they were, the Supreme Court of Maine, said:

> ''Whatever the early understanding, it is well settled now that whether a chattel has become a part of the realty is a mixed question of law and fact. . . . . It is now generally conceded that the old tests of physical character of annexation are discarded, and the modern trend of authority is adverse to any arbitrary or fixed rule by which it may be determined whether a chattel is or is not a fixture. . . . In order to meet the first of these conditions (annexation), it is not necessary that the chattel should be physically fastened to the realty at all times. There may be constructive, as well as actual, annexation. It was said in Farrar et al. v. Stackpole, 6 Greenl. (Me.) 154, 19 Am. Dec. 201; . . . 'The civil law allows movable property to be made immovable by destination. Corresponding to this is the annexation by intention of the recent common law. Where such annexation is allowed, it is sufficient that the owner intends to make the chattel a part of the realty. It is not necessary to use force. It is enough to exercise the will. If this is duly manifested, the article is dedicated to the realty, and its status as personalty has ceased. These two methods of annexation are sometimes called actual and constructive annexation.' ''

In this case the proof shows that the apartment buildings conveyed by appellant to appellee are what are known as ''efficiency apartments.'' The beds in question

are "in-a-door" beds, that is, beds which are so constructed as to size and shape as that they can be pushed back into a closet especially constructed in the building for the reception of this particular bed and thus hidden from view. The record shows that each one of the twenty-four apartments was equipped with such a bed and such a closet, and that the purpose of efficiency apartments is to furnish to prospective tenants such equipment. Were these beds physically annexed to the apartment by the slightest physical connection, there would be but scarce room for argument that they were not fixtures. There would be present the physical annexation, the adaptation to use with that part of the realty to which they were annexed, and there would be present the intention to make them permanent accessions to the realty. Actually there is present in this case the two latter elements, and there is only lacking the tenuous physical connection of the assumed case. There can be no doubt that these "in-a-door" beds were by the vendor at the time he erected these efficiency apartments and equipped them with these beds, dedicated to the realty. It was the intention that they should be part of the equipment of the realty. We are therefore of the opinion that in all respects they complied with the definition of ,a fixture under circumstances where constructive annexation is allowed in place of an actual though slight physical connection. The linoleum was laid and fastened to the floors of one or more of the rooms of each apartment. The window blinds were in place at the windows, and the curtain rods were placed and fastened over the windows for the purpose of holding drapes. These appliances had been provided by appellant, and at the time of the conveyance of the buildings and grounds to appellee were being used by the tenants occupying the apartments as furnishings provided by the landlord, and, obviously, compensation for their use was included in the monthly rental paid by the tenants. The very nature of this equipment—the type of the buildings in which used and to which the linoleum, window blinds, and curtain rods were annexed, the mode of annexation, and the fact that these things were provided for use and used as permanent furnishings of an apartment building and were incidental to the use and occupancy of an "efficiency apartment"—meets the tests of intention hereinbefore referred to, and are most persuasive that these articles

would not have been placed upon the freehold, except with the expectation and intention that they should be used and enjoyed in connection with the use, occupancy, and enjoyment of the realty, and, therefore passed to appellee by the conveyance of the ground and buildings.

Wherefore the judgment is affirmed.