## Schultz et al. v. Seiler Motor Car Company.

(Decided April 22, 1932.)

JOHN H. KLETTE for appellant.

BERT J. KING and M. L. GALVIN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

At the termination of a lease made by the appellants, whom we shall call the ''Schultzes,'' to the appellee, whom we shall refer to as the ''Motor Co.,'' the Schultzes sought to prevent the Motor Co. from removing from the leased premises certain improvements it had erected thereon, and, having been unsuccessful, the Schultzes have appealed. The property leased was a vacant lot. The duration of the lease was two years.

It was understood the Motor Co. was to use this lot for the display and sale of secondhand automobiles. The Motor Co. cleaned up the lot; leveled it off; erected fences around it; placed signs in conspicuous places upon it, and lighted them and the lot with a number of

outdoor or gooseneck, electric lights. It erected a one-story temporary office building, 12x12 feet in size upon the lot, which building was placed on concrete blocks, but not fastened to them in any way. To supply current to the various electric lights the Motor Co. placed on the ground conduits leading from this office to these various lights and installed in the conduits electric wires to supply these lights with current. It then covered the lot and covered these conduits with cinders which were leveled and tamped to adapt the lot to the use for which it was intended.

Things went along smoothly until the Motor Co. started to remove these things from the premises at the expiration of the lease. The Schultzes contend that, when the lease was made, it was agreed that these things should remain upon the lot after the expiration of the lease, but the lease is in writing and contains no such agreement. The Schultzes allege such an agreement was made and was omitted from the lease by fraud or mistake.

Unfortunately for them, Mr. G. A. Seiler, the president of the Motor Co., with whom these negotiations were had, and who signed the lease with the Schultzes, had died before this litigation began, and by subsection 2 of section 606 of the Civil Code of Practice, as it then was, the testimony of the Schultzes relative to such an agreement was properly excluded. Their avowals are in the record, however, and are so contradictory and inconsistent as to make the testimony about the omission of the agreement from the lease rather doubtful, even if it were admissible.

Thus, the question is, without any agreement relative to the removal of these things, Was the Motor Co. entitled to remove them?

The Schultzes have called to our attention the following cases, which we shall now consider:

Doll v. Guthrie, 233 Ky. 77, 24 S. W. (2d) 947, which was a controversy between a vendor and a vendee.

Morrow Manfg. Co. v. Race Creek Coal Co. et al., 222 Ky. 807, 2 S. W. (2d) 662, which was a controversy between a seller retaining a lien for the purchase price of a coal-shaking screen and a mortgagee of the realty upon which the screen was erected.

In each of these cases the fixtures in question were held to be irremovable fixtures. Another case relied on by the Schultzes was Unz et al. v. Price's Admr. et al. (Ky.) 58 S. W. 705, 22 Ky. Law Rep. 791, in which case the lease had been renewed, and, while the original lease had provided that the lessee might remove the fixtures at the end of the lease, the lease was renewed, and there was no proof that the right to remove these things was reserved in the new contract, and we held that the fixtures could not be removed. The Schultzes overlook the difference between the right to remove fixtures as between landlord and tenant and the right to remove such, as between parties sustaining other relations to each other. This rule is thus stated in 26 C. J., p. 695, sec. 81.

"As between landlord and tenant, it has been said, more than in the case of any other relation, the greatest latitude and indulgence are to be allowed in favor of the tenant's claim to have particular articles considered as personal chattles rather than as part of the freehold."

This court announced a very similar rule in the case of Johnson's Exr. v. Wiseman's Exr., 61 Ky. (4 Metc.) 357, 83 Am. Dec. 475, where we said:

"Questions respecting the right to what are called fixtures arise between three classes of persons: 1. Between heir and executor; and there the rule obtains with most rigor in favor of the inheritance, and against the right to consider, as a personal chattel, anything which has been affixed to the freehold. 2. Between the executor of a tenant for life and the remainder man or reversioner; and here the right to fixtures is considered more favorably for the executor. 3. Between landlord and tenant; and here the claim to have articles considered as personal property, is received with the greatest latitude and indulgence. 4. There is still an exception of a broader character in respect to fixtures erected for the purposes of trade."

We quoted this rule with approval in the case of Harrison, Trustee et al., v. Schluder et al., 2 Ky. Op. 505, and following that rule the tenant was allowed to

462

remove certain character of buildings which he had put upon the leased premises for his convenience and for the purposes of trade.

In Meade v. Lansdowne. 2 Ky. Op. 279, we affirmed a judgment that allowed Meade to remove certain salt pans and implements for the manufacture of salt, which he had installed on the leased premises.

In Tabor v. Tabor, 213 Ky. 312, 280 S. W. 134, we affirmed a judgment which allowed a tenant to remove certain store fixtures which he had installed in the store and in Cohen v. Reif, 223 Ky. 603, 4 S. W. (2d) 388, we held the lessee had the right to remove a "brass railing," which the lessee had installed around an orchestra pit.

The things involved in this controversy were "trade fixtures," which the Motor Co. had installed on these premises for its own convenience, and the court did not err in allowing it to remove them.

The judgment is affirmed.