# Bank of Shelbyville v. Hartford et al.

(Decided March 9, 1937.)

GILBERT & DAVIS for appellant.

C. G. BARRICKMAN, T. B. ROBERTS and R. F. MATTHEWS for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

This is an appeal from a judgment rendered in the Shelby circuit court, wherein it was adjudged that appellant by reason of a mortgage it held against I. J. Sanders and John D. Buckner, partners, doing business in Shelbyville, Ky., on bowling alleys, alleyways, racks and other equipment and accessories used in connection therewith and attached to the building, and seats used in connection with the bowling alleys and alleyways attached to the building on the second floor of the Hartford building, property that belonged to appellees, was a part of the building, and, therefore, the property of appellees, and not in lien to the Bank of Shelbyville. From that part of the judgment the Bank of Shelbyville appeals.

The first question that we are called upon to decide, is were the bowling alleys, alleyways, etc., permanent fixtures and part and parcel of the real estate belonging to appellees at the time the mortgage was made and executed to it on August 15, 1932, by I. J. Sanders and John D. Buckner? No question has caused the court and members of the legal profession more trouble than the one under consideration and questions similar to it. It has been the rule of law almost from time immemorial that whatever was fixed to the soil became in contemplation of the law a part of it and gave the owner of the soil the same rights to it as the soil itself. However, in more modern times the courts have become more liberal, and, as we think, more in line with advancement of the commercial activities of the human race; so the ancient rule has been very much modified. At this time it is a settled rule that an erection made on premises of the owner of real estate for the purposes of trade as well as for some other purposes is removable at the tenant's will at any time before the end of the term. It is also the modern rule in determining what is a fixture, "the notion of physical attachment is exploded; it is now determined by the character of the act by which the structure is put into its

place, the policy of the law connected with its purpose and the intention of those concerned." Meigs' Appeal, 62 Pa. 28, 1 Am. Rep. 372. See, also, Atchison, T. & S. F. Ry. Co. v. Morgan, 42 Kan. 23, 21 P. 809, 4 L. R. A. 284, 16 Am. St. Rep. 471; Preston v. Sabine, etc., Ry. Co., 70 Tex. 375, 7 S. W. 825; Justice v. Nesquehoning Valley Ry. Co., 87 Pa. 28; Morgan's Appeal, 39 Mich. 675; Dietrich v. Murdock, 42 Mo. 279; Wagner v. Cleveland & T. Ry. Co., 22 Ohio St. 563, 567, 10 Am. Rep. 770; Jones v. New Orleans & S. Ry. Co., 70 Ala. 227, 228; Ray v. Young, 160 Iowa, 613, 142 N. W. 393, 394, 46 L. R. A. (N. S.) 947, Ann. Cas. 1915D, 258; Bache v. Central Coal & Coke Co., 127 Ark. 397, 192 S. W. 225, Ann. Cas. 1918E, 198; Pennington v. Black, 261 Ky. 728, 88 S. W. (2d) 969.

The rule stated in 26 C. J. p. 695, sec. 81, reads as follows:

"As between landlord and tenant, it has been said, more than in the case of any other relation, the greatest latitude and indulgence are to be allowed in favor of the tenant's claim to have particular articles considered as personal chattels rather than as part of the freehold,"

which rule was approved in Harrison, Trustee, et al. v. Schluder et al., 2 Ky. Op. 505. In that case the tenant was permitted to remove certain character of buildings which he had put upon the leased premises for his own convenience and for the purpose of trade. Schultz et al. v. Seiler Motor Car Co., 243 Ky. 459, 48 S. W. (2d) 1068; Mead v. Lansdowne, 2 Ky. Op. 279. In the Mead Case the tenant was permitted to remove salt pans and implements used for the manufacture of salt, which he had installed upon the leased premises. Also, in the case of Tabor v. Tabor, 213 Ky. 312, 280 S. W. 134, the tenant was permitted to remove store fixtures which he had installed for his business in the store. In the case of Cohen v. Reif, 223 Ky. 603, 4 S. W. (2d) 388, the tenant was permitted to remove a "brass railing," which he had installed at his own expense around an orchestra pit. In First State Bank of Eubank v. Crab Orchard Banking Co., 255 Ky. 800, 75 S. W. (2d) 517, 518, we stated:

"The ancient rule has been enlarged and liberalized with the increase of varying business interests, and the present current of authority is opposed to any

arbitrary or unyielding rule upon the subject, with the result that the tests for determining whether an article is a fixture are: (1) Annexation to the realty, either actual or constructive; (2) adaptation or applicaion to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) intention to make the article a permanent accession to the freehold."

See Hill v. Mundy, 89 Ky. 36, 11 S. W. 956, 11 Ky. Law Rep. 248, 4 L. R. A. 674, and the subsequent cases of De Charette's Guardian v. Bank of Shelbyville, 218 Ky. 691, 291 S. W. 1054, and Doll v. Guthrie, 233 Ky. 77, 24 S. W. (2d) 947.

The question then arises, What is a trade fixture? We find that it has been defined as follows:

" 'Trade fixtures,' is a term usually employed to describe property which a tenant has placed on rented real estate to advance the business for which it is leased and which may, as against the lessor, be removed at the end of the tenant's term. Winnike v. Heyman, 185 Iowa, 114, 169 N. W. 631, 632. Articles attached by the tenant to the demised premises for trade purposes are 'trade fixtures.' Northwestern Lumber & Wrecking Co. v. Parker, 125 Minn. 107, 145 N. W. 964, 965. To constitute any chattel that has been attached to the freehold a 'trade fixture,' it is only necessary that it be devoted to what is known in the law of fixtures as a trade purpose, and the form or size of the annexed chattel is immaterial. Waverly Park Amusement Co. v. Michigan United Traction Co., 197 Mich. 92, 163 N. W. 917, 918. A trade fixture, within the rule that a lessee, as between himself and the lessor, may remove a trade fixture, is an article annexed by the lessee to the real estate to aid him in carrying on his trade or business on the premises. Ray v. Young, 160 Iowa, 613, 142 N. W. 393, 396, 46 L. R. A. (N. S.) 947, Ann. Cas. 1915D, 258."

Words and Phrases, Third Series, vol. 7, p. 550.

We find from the evidence that the storehouse in which the bowling alleys in question were built formerly belonged to John H. Hartford, who was the husband of appellee, Mrs. John H. Hartford, and the father of Frances Hartford and Elizabeth H. Hunter; that he

first leased the property, as far back as 1925, to I. J. Sanders, who at that time was a partner with Douglas Harbison. A pool room was at that time in the building. The bowling alleys have been in the building at least from 1927 until the time this suit was instituted. The evidence shows that prior to the building of the bowling alleys in question, I. J. Sanders and his partner had business in the lower part of the building. The building had depreciated somewhat, was out of repair, and Mr. Hartford was having trouble to rent it profitably; part of the time he occupied the second floor, where the bowling alleys are situated now, with his family; so for the purpose of making the storehouse more profitable, he entered into an agreement with I. J. Sanders and his partner, by which they agreed that all of the interior of the second floor could be torn out at his expense, so that Sanders could put bowling alleys in it. In pursuance to that agreement, Sanders did at a considerable expenditure, tear out the interior of the second floor, making it just one large room. The material taken out was taken charge of by Mr. Hartford; Sanders and his partner entered into an agreement with a firm known as the Brunswick-Balke-Collender Company, Cincinnati, Ohio, who was engaged in selling bowling alleys and billiard tables, to build and erect for them the bowling alleys now in question; in doing so, Sanders and his partner were compelled to execute their notes to this firm, secured by a mortgage on the bowling alleys, for the cost of the bowling alleys and putting them in the building. The cost was about $6,-500. It is hardly reasonable that Sanders and his partner would have expended that much money to build the bowling alleys and equip them for the purpose of adding to the wealth of Mr. Hartford, the owner of the property. It is shown by the evidence of Sanders and others, that at no time in the lifetime of Mr. Hartford did he claim to have any interest in the bowling alleys. In fact, the proof further shows that Sanders sold an interest in the bowling alleys to John D. Buckner long after the bowling alleys were put in. The bowling alleys could not be considered any part of the building because it was not necessary to the enjoyment of the building on the part of the owners to have bowling alleys in it. The object and purpose could not have been otherwise than that Sanders and his partners put the alleys in the building as trade fixtures only; that is, to carry on

their own business and to make it more profitable. We do not see from the evidence how removal of the bowling alleys, seats, etc., that belong to it, would materially damage the building, because the evidence is convincing that the floor of the building would remain just as it was before, except possibly a few nail holes where it was necessary to nail pieces in the erection of the alleys, but those nail holes could be filled up and if the floor became torn in any way by reason of drawing out the small nails, which were eight-penny nails, that could be remedied with very little expense; so we have come to the conclusion that the bowling alleys, together with the alleyways, racks, and other equipment and accessories used therewith and the seats that were built in connection with the bowling alleys are personal property and still belonged to I. J. Sanders and his partner, John D. Buckner, when they made and executed the mortgage to the Bank of Shelbyville. We think the trial court failed to draw the distinction where landlord and tenant exist and where vendor and vendee exist. In this case, the tendency of the courts is to lay down a rule, which it has done, more liberal as between landlord and tenant than between vendor and vendee, etc.

However, appellees' counsel raise another question that is necessary to be passed upon, and that is, that the mortgage sued on in describing the property on which they claim a lien is too indefinite and uncertain. Counsel offer as authority on that question Hart County Deposit Bank v. Hatfield, 236 Ky. 725, 33 S. W. (2d) 660, where a mortgage was condemned for lack of certainty because in that mortgage the ownership of the property was not stated, nor the post office of the individual, who owned the property, and no description was given in the mortgage except to state so many mules, etc. We do not think that opinion militates against the mortgage sued on, not being definite enough. The mortgage sued on states that it is on bowling alleys and equipment and everything used by Sanders and Buckner in the operation of the business in the Hartford building. We feel in making reference to the Hartford building and also stating that everything used by Sanders and Buckner situated in that building was enough to put any one on notice. Sanders and Buckner, or at least Sanders, as the proof showed, has been in business in Shelbyville since 1925, and prior thereto, and the Hartford building was evidently well known to the public, and it was well

known to the public that Sanders and Buckner were engaged in business in that building. While the mortgage is somewhat indefinite, we do not believe it is enough to make it void, and besides that, there is some evidence that appellees knew that Sanders and Buckner were indebted to this bank because Frances Hartford states in her deposition that "Isadore (meaning Isadore Sanders) came out home and told her that the Bank of Shelbyville was pressing them for money," thereby informing her, at least, that Sanders was indebted to the bank; but whether she had sufficient notice of the mortgage or not, we are of the opinion that a description of the articles named in the mortgage, was sufficient and definite enough to give the public notice.

We are cognizant of the fact that where the testimony is conflicting, it has been a rule of this court not to disturb the finding of the chancellor, unless his finding was clearly against the weight of the evidence. After reading this record carefully, we have become thoroughly convinced that the bowling alleys, etc., were not fixtures of that character that became a part of the property of appellees, but it was recognized at all times not only by appellees, but by Sanders and his several partners, that it was personal property; we believe that it can be removed without materially affecting in any way appellees' property; that appellant, the Bank of Shelbyville, by virtue of its mortgage, has a first and superior lien on the bowling alleys, alleyways, racks, and equipment and accessories, used in connection therewith, and upon the seats used in connection with the bowling alleys and alleyways on the second floor of the Hartford building, and it is entitled to have said lien enforced.

Wherefore, the judgment is reversed with proceedings consistent with this opinion.