## Caudill v. John P. Gorman Coal Company.

(Decided February 5, 1932.)

296

HOGG & MOORE and FAULKNER & FAULKNER for appellant.

W. W. REEVES for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

Appellant, William Caudill, brought this action against the appellee, John P. Gorman Coal Company. The coal company filed a demurrer to the petition. The demurrer was overruled. The coal company then filed an answer denying the allegations of the petition. The case came on for trial, and at the conclusion of the evidence for the plaintiff the court premptorily instructed the jury to find for the defendant. The plaintiff appeals.

The cause of action was set out in the petition in these words:

"For cause of action and complaint against the defendant corporation, plaintiff states that on or about February 1, 1929, in Perry County, he entered into a verbal contract with the defendant John P. Gorman Coal Company, by and through its superior officer, who had authority to do so—its superintendent—Bill Kilgore, whereby under the terms of said contract this plantiff agreed to get out all the necessary timbers for the defendant for use at its mine, that is to say to furnish all the mine props, jack props and cap boards for its mine in Perry County. Said mine timbers were to be made and

furnished by the plaintiff from the defendant's tract of timber near the mine. The parties agreed that said contract between them should be in full force and effect for one year from February 1, 1929, and for all the timbers so furnished under said contract and for each class and description defendant promised and agreed to pay plaintiff as follows: for ordinary props, 10c a prop; for jack props, 25c each; for cap boards, 1c each.''

It is insisted that the petition is insufficient on demurrer, for this reason: It alleges that Caudill agreed to get out all the necessary timbers, but it does not allege that the coal company agreed that he should do this. The same objection is made to Caudill's evidence on the trial, which was as follows:

''Q. What kind of work, if any, did you do for the defendant? A. I got out timber to be used around the mines.

''Q. Did you have any contract to that effect? A. Yes sir.

''Q. When did you make it? A. About February 1, 1929.

''Q. Who did you make that contract with? A. With the Superintendent, Bill Kilgore.

''Q. Go ahead and tell the jury what the contract was that you made—was it written or not? A. It was oral. Mr. Kilgore and I agreed on me getting these timbers at a fixed price. I was to get 10c for the split props, 1c for cap boards, and 25c each for jack props. I was to get out the other timber and props used around the mines, but we didn't have any fixed price on them, I was to get it and then we would agree on them according to what it was.

''Q. How long did you contract that you would furnish these to the mines? (Defendant objects, the court overrules, defendant excepts.) A. For one year.''

Put in narrative form, he also testified:

''The timber was on the mine lease. I was to deliver them to the tramway and worked under the contract four months, furnished on an average 1,500 split props a month and from 1,000 to 1,500 cap boards—the props cost me about 3c a prop; the caps

about ¼c. The mine ran regularly the first four months of the year and ran about the same the last eight months. A new superintendent came in and he notified me not to get out any more timbers. I furnished all the timbers needed in the mine until he stopped me.''

The plaintiff also testified that he had no agreement as to how many props he was to get out, but that he was to get out sufficient props to go in the mines and sufficient timbers for the mine; the foreman notified him when timbers were needed and he would deliver them, and that the same amount of timbers was necessary in the last eight months of the year as had been used in the first four months. He proved by other witnesses that Kilgore was the general mine foreman and had charge of the mine; that the mine ran about the same the last eight months as in the first four months, and required about the same amount of timbers.

1. *As to the sufficiency of the Petition.* It substantially alleged the breach of the contract after four months and prayed damages in the sum of $1,000 for its breach, but it did not allege that the mine continued in operation, or what, if any mine props, jack props, or cap boards were necessary for the defendant for use in its mine during the last eight months of the year. As by the contract only such of these timbers as were necessary in the operation of the mine were to be furnished, and the action is for loss of profits on the contract, these facts should have been averred; for without this it does not appear that the plaintiff lost any profits, as his contract only covered ''the necessary timbers for the defendant's use at its mine.''

In the petition, as quoted above, it is alleged that on or about February 1, 1929, the plaintiff entered into a verbal contract with the defendant, and that the parties agreed that the contract should be in full force and effect for one year from February 1, 1929. By section 470, Kentucky Statutes no action shall be brought to charge any person upon any agreement which is not to be performed within one year from the making thereof, unless in writing signed by the party to be charged. The pleading must be construed against the pleader. The allegation that the contract was made on or about February 1, 1929, and was to be in full force and effect for one year from February 1, 1929, may be true, although

the contract was made in January, 1929, and was not to be performed within one year from the making thereof. An objection under the statute may be made by demurrer. The petition read against the pleader showing that the contract was not to be performed within a year from the making thereof, the demurrer to the petition, upon this ground, also should have been sustained, for it is not alleged that the contract was for one year from the making of it, and, when this is not the case, and a day is fixed, it is presumably a subsequent day.

2. *As to the Peremptory Instruction.* The court gave the peremptory instruction upon the ground "that the jury would have to speculate on how much timber was used by the mine for twelve months. The jury would have to guess at the number of props, not knowing much about it." In Mitchell-Taylor Tie Co. v. Whitaker, 158 Ky. 651, 166 S. W. 193, there was a contract involving the sale of the ties from a territory described in a general way. How many ties could be produced from the territory was not definitely shown, but this was held a question for the jury. To the same effect is Union Cotton Co. v. Bondurant, 188 Ky. 319, 222 S. W. 66, 67, which was an action for the loss of profits from a failure to furnish a cotton gin. There the court thus stated the rule, with many authorities sustaining it:

> "Where a breach of a contract is involved, loss of profits is a proper element of damages, where they can be shown, not with absolute, but with a reasonable, degree of certainty, and when it may be reasonably considered that when the contract was made that parties had in contemplation the loss of profits as an element of damages which would naturally grow out of a violation of the contract. The loss of anticipated profits which can be legally ascertained—that is, which do not lack certainty on account of being too remote, conjectural, and speculative—may be recovered."

Under this rule there was sufficient evidence here to take the case to the jury. The rule is that, if there is any evidence, the question is for the jury.

Neither the petition nor the evidence of Caudill was insufficient on the ground that, as shown thereby, Caudill agreed to get out all the necessary timbers, but it is not shown that the coal company agreed that he should do

this. It is alleged in the petition that the company agreed to pay him a certain price for the timber furnished under the contract, and by the contract he was to furnish all the necessary timbers for the defendant's use in its mine. The agreement of the company to pay him for all the necessary timbers for the defendant.for use at its mine for a year, under the allegations of the petition, naturally means that the company agreed that he should get out these timbers, for otherwise he could not get out the props and caps. The timber was the property of the company. The same is true of the testimony of Caudill. The contract, as stated by him, must be given a reasonable construction.

The court should have sustained the defendant's objection to the question quoted above, "How long did you contract that you would furnish these to the mines?" The contract was oral. What the contract was must be determined by what was said by the parties in making the contract. Caudill should have been confined to stating what was said, so that the court and jury could judge from what was said as to how long the contract was to be. His conclusion that the contract was for a year may not have been warranted by what was actually said. If in telling what was said the witness fails to testify on any subject as to what was said, he may be asked what was said on this subject. But he may not testify as to his conclusion as to what the contract was on any subject.

It appears from Caudill's testimony that he furnished, after June 1, the timbers that he had already cut. How much of this timber there was does not definitely appear. The amount should be shown, for he can in any event only recover for what was necessary in the use of the mine after all the timber that he furnished was used up. He should also show how much of the timber he had furnished before June 1 was on hand and not used up at the time he was discharged. While from the facts shown it would not be presumed that this was sufficient to run the mine for the remaining eight months of the year, the above facts are necessary to an intelligent understanding of the case by the jury.

Judgment reversed, and cause remanded, with directions to grant a new trial, sustain the demurrer to the petition, and for proceedings consistent herewith.