## American Rolling Mill Co. v. Carol Mining Co. et al.

Feb. 23, 1940.

Watt M. Prichard, Judge.

Caldwell & Gray for appellant.

Clyde R. Levi, Davis M. Howerton, L. C. Fielder, J. Gardner Ashcraft, Vernon Dinkle, and Otto C. Gartin for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This appeal involves the sole question as to whether the property ordered to be sold by the judgment appealed from—as the property and assets of lessee and appellee, Carol Mining Company, upon the settlement of its indebtedness following insolvency—is in reality and actually assets of the insolvent lessee, or whether it became a part of the realty and vested in appellant as lessor upon the legal termination of the lease by appellant, in accordance with its terms, after default in payment of royalties and rent? The trial court held that the property ordered to be sold did not vest in appellant as lessor upon the termination of the coal lease but that it, under the law and the lease, remained the property of the lessee and could be removed by it, subject to the lessor's lien for unpaid royalties and rent and ordered the property sold for the payment of the lessee's debts, including of course the lessor's lien. The court prior to the rendition of that judgment had determined the question of priority of liens in and to the proceeds of the sale as between appellant, the lessor on one side, and compensation claims and unpaid laborers of the lessee, on the other side, and that judgment was affirmed by us in the recent case of Wyser Adkins v. Carol Mining Company et al., decided January 16, 1940, and reported in, Ky., 136 S. W. (2d) 32, neither of which at this writing has been published.

The facts are: On October 30, 1926, appellant as the owner of certain coal-bearing lands in Boyd county executed a lease to one J. E. Rhodemyre, trustee, giving the right—on the terms therein stated—to the lessee to mine coal from the leased premises including the usual rights incident to such operations. Both rent and royalty were provided for with periodical contract payments and the amounts thereof. The immediate trustee appears not to have developed the property, and on April 11, 1927, he transferred his rights in the lease to the appellee, Carol Mining Company, a corporation that had been formed

for that purpose. That assignment was confirmed on May 31, 1927, in writing duly executed by all parties, and in which alterations were made in the original lease, one of which said: "(1) The lessee or assigns, not being in default hereunder for rent or royalty, shall have the right and privilege within six months after the expiration of termination of said lease, to remove from said premises all houses, structures and buildings, and all other improvements placed thereon by the lessee or assigns."

Later, and on November 18, 1935, there was another mutual modification of the lease in writing duly executed by the parties, but none of which affects the question here involved—the changes relating only to the periods when payments were to be made, and one of which said: "3. Default in payment of royalty for more than thirty days after same becomes due shall entitle Lessor, at its option, to declare this lease forfeited and to re-enter and take possession of the leased premises."

This action was filed by appellant as plaintiff below against its lessee, the appellee Carol Mining Company, in the Boyd Circuit Court, on December 27, 1938, in which plaintiff sought the recovery of a judgment against its lessee for an alleged balance due it as unpaid rental and royalties amounting to $2,324.98. There was an attachment procured at the inception of the litigation which was levied by the sheriff upon the property here involved (and also perhaps on other property) as belonging to the lessee and which plaintiff sought to subject to the payment of its rental and royalty claim and to enforce as against the attached property what it claimed to be a superior lien given by the law to landlords as well as by plaintiff's lease contract. The owner of the unpaid compensation claim due from the lessee intervened and asserted a superior lien over that of plaintiff to the proceeds of the attached property, under statutes conferring such superiority; and also some unpaid laborers for the lessee likewise intervened claiming the same superior right to the extent of their unpaid claims, and which questions were disposed of by us in the case supra in favor of such interveners. While that question was pending in this court, and before it was determined by us, the trial court entered the judgment from which the instant appeal is prosecuted and which we repeat

presents the sole question as to whether or not the property ordered to be sold by the judgment appealed from belonged to the lessee and, therefore, subject to the payment of its indebtedness, or whether it belonged to plaintiff, the lessor, under the doctrine relating to fixtures as between landlord and tenant.

Strange to say, counsel for both sides cite us to the same cases which each of them insists support their respective contentions, they being: Bank of Shelbyville v. Hartford, 268 Ky. 135, 104 S. W. (2d) 217; First State Bank of Eubank v. Crab Orchard Banking Company, 255 Ky. 800, 75 S. W. (2d) 517; Morrow Manufacturing Company v. Race Creek Coal Company, 222 Ky. 807, 2 S. W. (2d) 662; and Tabor v. Tabor, 213 Ky. 312, 280 S. W. 134. A reading of those opinions will disclose that the condition of the law with reference to fixtures upon the question as to whether or not they remain chattels removable by the tenant in the relationship of landlord and tenant, or whether they become a part of the realty and the title thereto becomes vested in the landlord, is made to depend upon a number of interlocking facts, each of which appears to modify or qualify the others to such an extent that the law with reference thereto is in a state of more or less confusion. But throughout all the written law on the subject (including opinions as well as texts, and which is acknowledged in the cited domestic opinions) it is emphasized that the controlling fact after all is one of intention of the parties to the lease contract.

Therefore, if it appears that it was their intention that all structures, and everything put upon the leased premises by the lessee, were to remain chattels at the termination of the lease, with the title remaining in the lessee, and with the right of removal by him, then it becomes the duty of the court to so determine and adjudge accordingly regardless of the fact of fixation or annexation or other determining one in the absence of such controlling intention. If, therefore, this record presents a case where the intention of the parties to the involved lease contract—with its modifications—was that the title to the involved property should remain in the lessee and be removable by him on the termination of the lease, then all other controlling facts must surrender thereto.

At the threshold, we are confronted with an outstanding fact most strongly convincing and persuasive that at least the lessor (plaintiff and appellant) regarded the involved property, when it filed this action, as belonging to its lessee, since it then procured an order of attachment against its property and had same levied on what it now claims was and is its own property, the title to which it now insists was obtained as a result of the correct application of the doctrine of fixtures relied upon. It, therefore, in its present contention (being the one made on this appeal), occupies a directly antagonistic position to the one it took upon the filing of its action. However, it should be said that such inconsistency is not necessarily controlling, but nevertheless it is a relevant circumstance in the determination of the principal fact, i. e., as to what was the intention of the parties at the time the lease and its various amendments were executed.

Supplementing the fact to which we have just referred is the one running throughout the lease giving the lessor a lien upon the property of the lessee placed upon the leased premises by it to secure the former's unpaid rental and royalty, for which the parties thereby contracted in addition to any statutory lien that might be given for such claim. · It would therefore most strongly appear that the parties intended that the title to such property was and would continue to be in the lessee and which it—through and by such stipulations— placed in lien for its lessor's unpaid rental and royalty. But, and as if to put the question of intention beyond dispute, the first amendment to the lease, of date May 31, 1927, contains the provision inserted supra to the effect that the lessee not being in default in the payment of rent or royalty, should have the right to remove from the leased premises "all houses, structures, and buildings, and all other improvements placed thereon by the lessee, or assigns," and which is a clear recognition that the property of the lessee, put upon the leased premises in the operation of its mining activities, might be removable by it, within six months after the termination of the lease; provided it was not in default in the payment of rent, to secure which the same property was in lien, perhaps by statute, and most certainly by contract.

Plaintiff by bringing the property in the custody of

the law through its attachment, and by creating a lis pendens thereon under its liens, so circumstances the lessee (defendant in the action) as that it could not remove the property within the six months provided in the lease, and it being insolvent it could not pay the past due rent or royalty. But it does not necessarily follow that the conditions thus produced operated to vest the title of the property in plaintiff, the lessor, as against the lessee, or its creditors—the only procedural effect of that stipulation in the lease being that the property should remain on the leased premises until the claim of the lessor for rent and royalty was paid and its lien of whatever nature thereby extinguished. The situation as we view it is so succinctly stated by counsel for appellees in their brief that we have concluded to insert therefrom with our approval this excerpt: ''We are well aware that this right of removal was to be exercised in the event Lessee was not in default in the payment of rent or royalty, but it is obvious that this condition was not placed in there for the purpose of obtaining title to this property. In the circumstances, it is clear that the provision was placed there as security for unpaid rent or royalty. It is submitted that the taking of this precaution did not destroy or take away the original or dominant intent of the parties that this property should not become a permanent part of the leasehold. In fact, this provision for security of the rent was the sole and only purpose of the amendment to the lease. The right to remove or not remove the property was contingent on the matter of default in the payment of rent and is subordinate to the dominant intent that it could be removed.''

Another important and relevant fact bearing upon the question of intention as shown by the record is manifested by the allegations of appellant's petition as well as portions of the prayer thereto. It alleged that: ''It has a lien for the delinquent rents and/or royalty upon the leasehold created by said lease and upon all structures, improvements and equipment made or erected on the premises, which lien is a landlord's lien for rent and is prior and superior to all other liens whatsoever against said property,'' whilst in the prayer it asks for a lien on ''all the property and equipment of the Carol Mining Company,'' and that it ''be required to answer

herein or be forever barred from asserting any interest whatsoever in the property described herein, or the machinery, equipment, or structures located thereon.''

In the light of the foregoing but two conclusions are possible, and which are, that plaintiff at the time it executed the lease—and continuously thereafter—and at the time it drafted and filed its petition, was woefully mistaken as to its and its lessee's intention in the premises; or that no such intention ever existed, which latter is the one now taken by it on this appeal in this court.

The adverse litigants of course contend—and have always so contended—that it was the intention of the parties to the lease contract that the property involved under the terms of the lease should be treated as chattels belonging to the lessee, and we are convinced that the position so contended for by them is indisputably shown to be true and that the court did not err in so determining.

We have not overlooked the fact that under the interpretation we have made possibly the court might have treated the buildings put upon the leased premises as assets belonging to the lessee under the excerpt supra from the amendment made to the lease on April 11, 1927, and confirmed May 31, thereafter. But no one questions its failure to do so, and therefore no such question is presented.

Wherefore, for the reasons stated the judgment is affirmed.