## Ratliff v. Utilities Elkhorn Coal Co.

March 13, 1945.

564

L. J. May for appellant.

J. J. Moore for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE TILFORD— Affirming.

On January 16, 1929, appellee leased from John C. and James H. Ratliff the coal mining rights in a tract of land, the surface of which, together with an undivided one-half interest in the minerals, was acquired by appellant on July 10, 1937. On or about June 1, 1942, appellee terminated the lease and removed from the premises "2 shop buildings, 1 oil house, one powder house, 1 hoist house, 1 vent and hopper", all of which had been erected by it for use in its mining operations. On July 9, 1942, appellant instituted this action, which, by agreement, was transferred to the equity docket, to recover $5,000 for the buildings removed, $5,000 for damages to the land resulting from slate deposited thereon contrary to the terms of the lease, and $2,500 punitive damages. The Chancellor disallowed appellant's asserted right to the building and equipment named, but awarded him $100 damages on account of the slate deposits and from that judgment he has appealed.

The fifteenth and eighteenth clauses of the lease, the only ones having any bearing on the present controversy, are as follows:

"Fifteenth: At the termination of this lease all tenant houses, store buildings, and store houses, shall become the property of and belong to the Lessor, John C. Ratliff, or his heirs or assigns without accountability therefor; and the said lessors shall have the right and authority to reenter on said property and take possession thereof and own, control and enjoy same as hereinafter provided for.

"Eighteenth: It is further agreed that the Lessee,

its successors and assigns, shall have the right to erect or build a trestle across Hurricane Creek. Also the right to erect tram-roads, blacksmith shops and such other buildings and roads and appliances as may be necessary in order to mine the coal on said right side of said creek, provided, however, that no slate shall be dumped on cleared land, but lessees shall have the right to dump the same on the left hand side of said hollows''.

Since none of the improvements removed by appellee was of the character or type which the lease provided should become the property of the lessor, it is obvious that appellant's asserted right to recover the value of those removed was properly rejected in view of the generally recognized rule that the intention of the parties controls the ultimate disposition of the improvements erected or installed by a tenant, and that, nothing to the contrary appearing, the presumption is in favor of the intention, and hence of the right, of the tenant to remove from the leased land at the expiration of the term the improvements which he has erected thereon for business purposes. Bank of Shelbyville v. Hartford et al., 268 Ky. 135, 104 S. W. 2d 217; American Rolling Mill Co. v. Carol Mining Co., 282 Ky. 64, 137 S. W. 2d 725; 22 American Juris., Fixtures, sec. 40, pp. 749-751.

As to the claim for damages to the land resulting from the improper deposit of slate, it is sufficient to say that the evidence indicates that the location of the slate pile was acquiesced in by all the parties at interest, and that the small area outside of that location, slightly in excess of one-twentieth of an acre, on which some slate was deposited contrary to the terms of the lease, was worth approximately $15. As to the slate which was scattered over other portions of the land by the removal of the buildings, the testimony indicates that it could be picked up and removed in less than a day at an expense of $5. If, as the evidence seems to show, the main slate pile was located at a point not prohibited by the terms of the lease, it would appear that the Chancellor's award of $100 in damages was extremely liberal. In any event, under the well known rule regarding the weight to be given the Chancellor's fact finding, we would not be justified in disturbing it.

Judgment affirmed.