# Warren Post No. 23, American Legion v. Jones.

October 1, 1946.

862

Rodes K. Myers and Leland H. Logan for appellant.

Rodes, Harlin & Willock for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing in part, affirming in part.

Warren Post No. 23, American Legion, Inc., owns a two-story brick building on State street in Bowling Green, the second story of which is used for meetings of the Legion and for recreational purposes. In the second story of the building are the assembly room, two recreational rooms, or club rooms, the canteen, the kitchen, and a hall. On September 11, 1940, Warren Post 23 of the American Legion entered into a written contract with John H. Jones, one of its members, whereby it leased to him for a period of three years, beginning October 5, 1940, and ending October 4, 1943, the club rooms and canteen located on the second floor of the building, with an option to extend the lease for a term of two years. This option was exercised by the lessee. The contract contained these provisions:

"Party of the second part shall not have exclusive control of either of the club rooms or of the canteen nor of the equipment located in same, but he shall have access to and use of same and shall be required to maintain them in such manner as is suitable and customary for the comfort, convenience, and welfare of members of party of the first part. However, the activities and operations of the club rooms and of the canteen shall be under the jurisdiction and general control of either the House Committee or the Executive Committee of party of the first part.

"As consideration for this lease party of the second part shall pay to the treasurer of party of the first part

monthly in advance the sum of $50.00 and in addition thereto he shall be required to pay the light bills for the club rooms and halls and in addition one-half of the heating bill for the entire building with a proviso that in the event any portion of any rental installment or any portion of any light or heating bills shall fall into arrears for as long as 10 days then in that event party of the first part may at its option terminate this lease at once upon demand.

"As a portion of the consideration for this lease party of the second part will at his own expense be required to air condition the canteen and the two club rooms prior to the expiration of the first year of the term of this lease."

During the spring of 1941 Jones installed a self-contained air conditioning unit, which was placed near the end of the hall next to the kitchen. The unit was about 7 feet high, 2 feet deep, and 4½ feet wide, weighed approximately 2,000 pounds, and was connected with a water line and a waste line of the building. An intake duct 10 inches by 24 inches in size extended from the unit to the outer wall of the building, and a hole was cut into the brick wall through which the air from the outside was drawn into the unit. A metal duct, or pipe, 12 inches by 24 inches, through which the cooled air was transmitted, extended from the top of the unit through a wall into one of the club rooms and thence through a wall into the second club room. Subsidiary ducts, or pipes, extended from the main duct to the assembly room and the canteen. These ducts, or pipes, were attached to the building by metal strips, and were papered over in conformity with the paper on the walls of the various rooms. The cost of the air conditioning unit installed in the building was approximately $1,800. Jones acted as custodian of the building, and operated under the lease until August 18, 1944, when the executive committee of the Post directed a letter to him demanding possession of the canteen and club rooms on or before September 5, 1944. The letter contained this statement:

"We therefore for the reasons hereinafter set forth request your voluntary cancellation of your lease dated Sept. 11, 1940, and now in existence by reason of a renewal. Our reasons which have been given to us by a majority of the members are:"

The letter then sets forth eleven reasons why the contract should be canceled. It appears that on August 22 the members of the Post ratified the demand made in the letter. In a letter dated August 29, 1944, addressed to the officers and members of Warren Post No. 23, American Legion, Jones accepted what he termed the mandate of August 22, ratifying an earlier demand for repossession of the club rooms, but protested the legality of both the demand and its ratification. On August 30, 1944, Jones appeared at the Legion home with laborers and mechanics and began disconnecting the air conditioning unit for the purpose of removing it from the building. Thereupon this suit was filed to enjoin him from removing the unit or any of its appliances or connections or any of the air ducts in the building. A temporary restraining order was issued by the judge of the Warren circuit court. It was alleged in the petition that the contract of September 11, 1940, required the defendant to install, at his own expense, air conditioning equipment in the building as a portion of the consideration for the lease, and that he did install an air conditioning unit which was attached to and became a part of the plaintiff's real estate. On September 6 the defendant filed an answer and counterclaim in which he denied that the air conditioning unit belonged to the plaintiff and alleged that it was a business or trade fixture installed by him for the purpose of making his tenancy profitable, and could be removed without injury to the building. In his counterclaim the defendant sought to recover damages in the sum of $500 for the alleged breach of the contract of September 11, 1940, by the plaintiff. He alleged that by reason of the breach he was deprived of one year of his lease from which he would have made a net profit of $500. On submission of the case the chancellor adjudged that the air conditioning unit was the property of the plaintiff, and enjoined the defendant from removing the unit or any of the air ducts in the building. He also adjudged that the defendant, on his counterclaim, recover of the plaintiff the sum of $500. The plaintiff has appealed from so much of the judgment as awarded the defendant damages on his counterclaim. The defendant has cross-appealed, and insists that the chancellor erred in awarding the air conditioning unit to the plaintiff.

A large amount of proof was taken, but most of it

was directed to the manner in which the air conditioning unit was attached to the building as bearing upon the issue as to whether or not it was a removable fixture. There was some proof on the issue of appellant's alleged breach of contract in ordering appellee to surrender the premises one year before the expiration of his lease, but there was not an iota of proof on the question of damages. In his counterclaim the defendant sought to recover only his lost profits as damages for the alleged breach of the contract by the plaintiff. He alleged that by reason of the breach "this defendant has been deprived of one year of his lease, from which, conservatively, he could have made a net profit of $500.00." The defendant did not introduce any witnesses. The plaintiff called the defendant as a witness to testify as if on cross-examination and his own attorney asked him four questions, but at no time did he testify concerning the profits of the business he had been conducting. "As a general rule, profits which would have been realized if a contract had been performed may be recovered as damages for its breach, provided they are susceptible of being ascertained with reasonable certainty, and their loss may reasonably be supposed to have been within the contemplation of the parties when the contract was made, as the probable result of its violation." 15 Am. Jur., Damages, section 151; Staves Mfg. Corporation v. Robertson, 278 Ky. 294, 128 S. W. 2d 745; Caudill v. John Gorman Construction Co., 242 Ky. 294, 46 S. W. 2d 93; Union Cotton Co. v. Bondurant, 188 Ky. 319, 222 S. W. 66. Before a recovery may be had for prospective profits, the evidence should be such as to establish the amount of profits expected with a reasonable degree of certainty. Kentucky Utilities Co. v. Warren-Ellison Cafe, 231 Ky. 558, 21 S. W. 2d 976. Evidence of prior profits in the same business furnishes a basis for computation of future profits. Here, it was the duty of the defendant to prove his profits with reasonable certainty, and to produce evidence which would either show directly the amount of damages sustained or establish facts from which the court could deduce with reasonable certainty the amount of such damages. He introduced no evidence on the subject, and, consequently, there was no basis for the allowance of any damages. It follows that the judgment in so far as it awarded damages to

the defendant on his counterclaim is erroneous, and must be reversed on the appeal.

The cross-appeal presents a more serious question. Each of the briefs is devoted in large measure to a learned discussion of the law relative to the removability of fixtures. The rule in this state must be conceded to be, as asserted by appellee, that as between landlord and tenant the greatest latitude and indulgence is given to the claim that fixtures attached to the realty by the tenant remain personal property. Bank of Shelbyville v. Hartford, 268 Ky. 135, 104 S. W. 2d 217; Schultz v. Seiler Motor Car Co., 243 Ky. 459, 48 S. W. 2d 1068. In American Rolling Mill Co. v. Carol Mining Co., 282 Ky. 64, 137 S. W. 2d 725, the court, after referring to Bank of Shelbyville v. Hartford, supra, and other cases from this jurisdiction, said (282 Ky. 64, 137 S. W. 2d 727):

"A reading of those opinions will disclose that the condition of the law with reference to fixtures upon the question as to whether or not they remain chattels removable by the tenant in the relationship of landlord and tenant, or whether they become a part of the realty and the title thereto becomes vested in the landlord, is made to depend upon a number of interlocking facts, each of which appears to modify or qualify the others to such an extent that the law with reference thereto is in a state of more or less confusion. But throughout all the written law on the subject (including opinions as well as texts, and which is acknowledged in the cited domestic opinions) it is emphasized that the controlling fact after all is one of intention ·of the parties to the lease contract."

We deem it unnecessary to consider the nature of the property involved in the present case or the manner in which it was attached to the realty, since we have concluded the record shows it was the intention of the parties to the lease that it should become a part of the real estate and belong to the lessor. It is appellee's contention that the air conditioning unit is a mere trade fixture installed by him for his sole benefit. The contract indicates, however, that the installation of the unit was required by the lessor for the comfort of its members, the only persons permitted to use the rooms. The air conditioning of the premises by the lessee was declared

to be part of the consideration for the lease. This provision of the contract reads:

"As a portion of the consideration for this lease party of the second party will at his own expense be required to air condition the canteen and the two club rooms prior to the expiration of the first year of the term of this lease."

Tending to support this construction of the contract is evidence that a member of the Post, other than appellee, offered to pay a monthly rental of $100 for the same space. It is significant that the difference between the contracted rent and the offered rent amounts, at the end of three years, to $1,800, the approximate cost of the installed air conditioning unit. There also was proof that appellee, at a regular meeting of the Post, announced that the installation had been completed, and presented the air conditioning unit to appellant. The written contract and the conduct of the parties thereunder for a period of nearly four years indicate a mutual understanding that the air conditioning unit was to become the property of the lessor.

Judgment is reversed on the appeal, and affirmed on the cross-appeal.