**EASTERN KY. LUMBER & DEVELOP-MENT CO. et al. v. WADDELL.**

Court of Appeals of Kentucky.
March 13, 1951.

Rehearing Denied May 25, 1951.

A. W. Mann, Ashland, for appellants.

Davis M. Howerton, Ashland, John F. Coldiron, Greenup, for appellee.

CAMMACK, Chief Justice.

This is a suit by the appellee, Oshie Waddell, against the appellants, Eastern Kentucky Lumber & Development Company and the D. B. Frampton Company, to recover damages for an alleged breach of a timber cutting contract. Eastern Kentucky counterclaimed for money due on an account and for certain alleged damages. The action was transferred to the equity docket and the Chancellor found the contract to be valid and enforceable. He awarded the appellee $2,235.92 as damages against both appellants, subject to a credit of $735.92 due Eastern Kentucky on its counterclaim. Both sides have appealed from that judgment.

The appellants urge for reversal: (1) that the contract is voidable for lack of mutuality, in that the appellee had the right to abandon it at any time, so that the appellants had the right of termination; (2) that the appellants did not breach the contract; (3) that the appellee had not complied with his contract to pay for the mill; (4) that the appellee did not prove any loss of profits and, therefore, may not recover; and (5) that Eastern Kentucky is entitled to recover $1,000 on its counterclaim as damages for lumber improperly stacked. The appellee urges on his cross-appeal that the damages awarded for loss of profits are insufficient.

On March 9, 1940, Eastern Kentucky Lumber & Development Company, being the owner of a large boundary of land in Boyd and Carter Counties, entered into a timber cutting contract with the appellee and Russell Scott. Scott later withdrew and the appellee, with the consent of Eastern Kentucky, operated under the contract.

The pertinent portions of the contract follow:

*   *   *   *   *   *

"Witnesseth: That said party of the first part, in consideration of the promises and agreements herein contained, hereby promises and agrees for a period of four years from the execution of this contract to pay the second party $7.00 per 1000 feet for all lumber the second party shall cut, log, saw, and stack on strips so that the said lumber will dry. * * * However, $1.00 of each said $7.00 is to be retained by the first party for the purchase of a sawmill by the second party from the first party at $1900.00. * * These prices remain the same with the following provision: Provided, however, that in the event that during such period there shall be a general revision of lumber prices the aforesaid prices shall be adjusted by mutual agreement between the parties hereto. * * *

"The first party agrees that no other mill or mills shall be moved to the property of the first party without the consent of the second party whilst this contract is in effect except as hereinafter stated. * * *

"The second party agrees to sever all lumber as above set out which shall be required by The American Rolling Mill for its plants at Ashland, Kentucky, Middletown, Ohio, and Zanesville, Ohio. The second party further agrees to sever as above set out a minimum of three and one half million feet per year if required by the first party.

*   *   *   *   *   *

"Should the second party fail to produce and sever as above set out the lumber required by the said three plants and fail to produce and sever as above set out the minimum requirements of three and one half million feet per year, if said amount is required by the first party, the first party shall have the right to use other sawmills and other contractors to sever the amount of timber required as above set out.

*   *   *   *   *   *

"For the purposes of clarification it is stipulated that the second party desires to cut all of the lumber the first party can sell,

and the first party desires to sell all of the lumber the second party can cut.

"In the event that the first party does not procure a market for all of the lumber the second party can cut, the second party has the right to secure a market providing there is a reasonable profit for the first party.

"The second party agrees not to cut great quantities of lumber for which the first party is unable to secure a market. In the event that there is no market the second party is not to cut great quantities and charge the party of the first part for such excess quantities.

"Upon the payment of the aforementioned $1.00 in cash for each 1000 feet which was to be applied upon the purchase price of the said sawmill the first party shall have the right to terminate this contract, providing, however that the other aforementioned payments shall have been made.

"This contract is not to be assigned by the second party. The first party being a corporation does have the right of assignment."

▮ We have concluded that this contract is valid and enforceable and is not terminable except on the condition stated in the next to last paragraph of the contract. The appellants argue that the appellee was not bound under this contract and could terminate it at any time. The appellee, however, agreed to sever all lumber required by the American Rolling Mill Company for certain plants and to sever a minimum of three and a half million feet per year if required by the first party. Under these circumstances the contract is bilateral.

▮ We think the appellee did not breach his contract with the appellants. The proof shows that there was due Eastern Kentucky on account $735.92. Eastern Kentucky has not always deducted $1.00 for each thousand feet to pay for the mill and has, in addition, lent the appellee various sums of money over the contract period. It is claimed that the appellee has not complied with his contract by his failure to pay for the mill. Eastern Kentucky, however, had a right to retain the money and has not

done so and further has, by lending money to the appellee, itself agreed to keep the account open. Under these circumstances we believe the appellants extended the earliest time at which they could terminate the contract to the point at which the appellee, at the given rate of $1.00 per thousand feet, could pay off the account, limited by the terms of the contract to four years.

Prior to February 13, 1943, Eastern Kentucky conveyed all of the standing and down merchantable timber upon its tract to J. B. Dickenson, Mrs. Beatrice Patton and Miss Rebecca Patton, stockholders in Eastern Kentucky. On February 13, 1943, they sold and conveyed fifteen million feet of timber to the appellant, D. B. Frampton & Company with the right to enter upon the land and cut, remove and manufacture the same for a fixed price, and the remainder of the timber at $4.00 per thousand board feet. Under these conveyances Frampton was placed in complete possession of the timber on the land. Up to this time the appellee had cut a total of 3,266,564 feet of timber and his work was apparently satisfactory to Eastern Kentucky.

▮ While negotiations for the sale were pending and about the time of the conveyance, the facts relied upon by the appellee to show a breach occurred. The appellee testified that about November, 1942, representatives of the Frampton Company told him in effect that he could no longer cut timber and that he was advised by Miss Patton, secretary to Eastern Kentucky, that they had sold out. The appellee at that time had been working at a place known as "Four Mile." He desired to move his mill to another location, because the "Four Mile" area could not be worked successfully during winter. The appellants objected to his moving to this new area and requested him to return to "Four Mile" or to accept certain other locations. They argue that they had a reasonable right to supervise the places at which he cut timber. The evidence for the appellee tends to show that the "Four Mile" area was not suitable and that the other locations offered were likewise not suitable. The appellants testified that the appellee customarily worked

but the best and most accessible timber in a given location, without cutting useable timber which was more difficult to reach. We must follow the Chancellor in concluding that the appellants ousted the appellee. The evidence raises no more than a doubt as to the correctness of his ruling. It is further shown that the Frampton Company moved its own mills on the property. Though there is no showing of an objection to this by the appellee, neither is it shown that he consented, as is required by his contract. We have concluded that the contract was breached by the appellants.

■ The evidence as to loss of profit goes beyond mere speculation. The appellee testified that his profit ran about $4.00 per thousand board feet of lumber. His latest daily expenses totaled $44.65. He averaged cutting about eight thousand feet of lumber a day. He received on an average $10.00 per thousand, obtaining anywhere from $9.00 per thousand to $16.00 per thousand on some grades of lumber. Profits which would have been realized if a contract had been performed may be recovered as damages for its breach, provided they are susceptible of being ascertained with reasonable certainty and are not remote, conjectural and speculative. In such cases, evidence of prior profits in the same business generally provides a reasonable basis for the computation of future profits. Warren Post No. 23, American Legion v. Jones, 302 Ky. 861, 196 S.W.2d 726; Staves Manufacturing Corp. v. Robertson, 278 Ky. 294, 128 S.W.2d 745.

■ With reference to Eastern Kentucky's counterclaim for $1,000 for lumber improperly stacked, we believe the Chancellor correct in finding the claim not proven. The evidence was conflicting as to whether the stacking was improper and the only evidence as to damage because of such improper stacking was introduced by the appellant in surrebuttal. The appellee objected to this evidence at the time and filed written exceptions on the ground that the evidence should have been introduced in chief and not in rebuttal. The Chancellor reserved a ruling on this motion until final submission and judgment and then found that the claim was unsupported.

■ As to the appellee's cross-appeal, the Chancellor found the breach to have occurred about November, 1943. This action was filed September 8, 1943, and all the evidence bearing on the question shows the breach to have occurred between November 1942, and February 1943. Therefore, the Chancellor was in error in allowing the appellee damages for loss of profit only from November, 1943, to the expiration date of the contract in March, 1944. The appellee claims that he is entitled to fourteen months' profit, or $5,352.92 in lost profits. The appellee is not entitled to a loss of profits on this whole period but is entitled to a loss of profits only on the lumber he could cut up to the point at which the appellants could have terminated the contract under the conditions specified therein. Since there was remaining due the appellants on account $735.92, it would require the appellee to cut 735,920 board feet of lumber to pay off that account at the given rate of $1.00 per thousand retained by the appellants. The profit on 735,920 board feet, computed at $4.00 per thousand, would be $2,943.68. This is the profit to which the appellee is entitled.

The judgment is affirmed on the appeal and reversed on the cross-appeal, with directions to allow the appellee $2,943.68 as damages for loss of profits, subject to a credit on the counterclaim of $735.92, leaving a balance due the appellee of $2,207.76.