RENDERED:  DECEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1533-MR

SEKY HOLDING CO., F/K/A FIRST
CORBIN LONG TERM CARE, INC.                           APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.          HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 17-CI-01821

AMERICAN WELDING & GAS, INC.,
SUCCESSOR BY MERGER TO
SCOTT-GROSS COMPANY, INC.                             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

DIXON, JUDGE:  SEKY Holding Co., f/k/a First Corbin Long Term Care, Inc.,

("First Corbin") appeals from partial and final summary judgments entered by the

Fayette Circuit Court on July 25, 2018, October 13, 2020, and November 20, 2020,

respectively.  After careful review of the briefs, the record, and the law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On March 19, 2010, First Corbin and Scott-Gross Company, Inc. ("Scott-Gross") entered into a contract under which Scott-Gross would supply medical gases to nine of First Corbin's nursing homes.[1]  Under this agreement, Scott-Gross was to retain ownership of the cylinders containing the gas, and First Corbin was to return said cylinders in good condition or pay Scott-Gross the replacement cost for any lost or damaged cylinders.  On or about December 5, 2016, First Corbin and Scott-Gross extended their agreement–with amended pricing–from March 19, 2017, until March 19, 2020.

On February 2, 2017, Scott-Gross emailed First Corbin regarding missing cylinders identified in a joint audit of its facilities.  On February 17, 2017, Scott-Gross requested payment for the missing cylinders and offered reduced pricing in exchange for a four-year extension to their agreement, which would serve to extend its services until March 19, 2024.  Another joint audit was conducted on March 24 and 27, 2017.  Following the results of this audit, Scott-Gross adjusted its demand for payment for missing cylinders.

On April 28, 2017, First Corbin wrote a letter to Scott-Gross advising that First Corbin no longer wished to utilize their cylinder service.  First Corbin asserted that their agreement expired on March 19, 2017, and requested that Scott-

---

[1]  Scott-Gross provided medical gases to First Corbin as early as the 1990s.

Gross make plans to remove its cylinders. On May 3, 2017, Scott-Gross responded to First Corbin's letter and enclosed a copy of the parties' December 2016 signed extension letter. Scott-Gross informed First Corbin that it stood ready, willing, and able to fulfill its obligations through the remaining term of the extended agreement. On May 5, 2017, First Corbin responded to Scott-Gross's letter stating it still desired the remaining cylinders to be removed from its facilities.

On May 17, 2017, Scott-Gross filed the instant action against First Corbin for breach of contract, quantum meruit, and unjust enrichment.[2] First Corbin moved the trial court to dismiss the action for improper venue. On June 26, 2017, after the motion was fully briefed and a hearing held, the trial court denied same.

Shortly thereafter, on August 8, 2017, Scott-Gross moved the trial court for a judgment on the pleadings and/or partial summary judgment concerning First Corbin's contractual liability. On August 31, 2017, after the motion was briefed, the trial court denied it without providing a written explanation.

Nearly a year later, on June 1, 2018, Scott-Gross renewed its motion for partial summary judgment against First Corbin based on its contractual liability. On July 25, 2018, after the motion was fully briefed and a hearing held,

---

[2] Holston Gases, Inc., ("Holston") was also named as a defendant; however, Scott-Gross later voluntarily dismissed its cause of action against it for tortious interference with a contract, without prejudice.

the trial court granted the partial summary judgment finding First Corbin breached the parties' contract.

Following the grant of partial summary judgment, First Corbin requested that Scott-Gross produce a complete copy of its federal and state income tax returns from 2015 through 2018. Consequently, Scott-Gross moved the trial court for a protective order, claiming the returns were not relevant to the case herein and that producing them would cause irreparable harm.[3] On March 5, 2019, the trial court entered a protective order granting Scott-Gross's motion.

Over a year later, Scott-Gross moved the trial court for partial summary judgment concerning its damages. Both First Corbin and Scott-Gross retained expert witnesses who gave opinions regarding damages. On October 13, 2020, after the motion was briefed, the trial court granted partial summary judgment for damages in an amount consistent with the testimony of First Corbin's expert witness. On November 20, 2020, the trial court entered a judgment incorporating its two prior grants of partial summary judgment. This appeal followed.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the

---

[3] At this point in the litigation, Holston, Scott-Gross's competitor, was still a party to the action.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[4] 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698 (Ky. App. 2000)).

## ANALYSIS

On appeal, First Corbin raises several arguments. We will address each, in turn.

## Venue

First Corbin first argues the trial court erred by denying its motion to dismiss based on improper venue. First Corbin cites KRS[5] 452.450, which provides in pertinent part:

> an action against a corporation which has an office or
> place of business in this state, or a chief officer or agent
> residing in this state, must be brought in the county in
> which such office or place of business is situated or in

---

[4] Kentucky Rules of Civil Procedure.

[5] Kentucky Revised Statutes.

which such officer or agent resides; or, if it be upon a
contract, in the above-named county, or in the county in
which the contract is made or to be performed[.]

Scott-Gross, in its response to First Corbin's motion to dismiss,
attached a copy of First Corbin's annual report filed with Kentucky's Secretary of
State a mere five days prior to filing of this lawsuit. In First Corbin's report, the
address it provided for its Chairman and Director, Roger Alsip, was in Lexington-
Fayette County, Kentucky.

It is the duty of entities doing business in Kentucky to ensure they
have accurately listed the information required by KRS 14A.6-010 in their annual
reports to the Secretary of State. Under KRS 14A.6-010(1), every corporation
*shall* provide the name and business address of the secretary or other officer with
responsibility for authenticating the records of the entity; the name and business
address of each other principal officer; and the name and business address of each
director. Under KRS 14A.6-010(2), "[i]nformation in the annual report *shall* be
current as of the date the annual report is executed on behalf of the entity or
foreign entity." (Emphasis added.) Neither of these provisions is optional.

Long ago, Kentucky's highest court opined regarding KRS 452.450,
"[i]t may be said the statute contemplates that the corporation is doing business in
the particular county to such an extent that it is actually present there and has such
a responsible agent in the county as would presumptively bring home to the

-6-

corporation notice of summons served upon him as its representative." *Hill v. Cumberland Dairies, Inc.*, 288 S.W.2d 341, 343 (Ky. 1956). Decades later, in *Kem Mfg. Corp. v. Kentucky Gem Coal Co., Inc.*, 610 S.W.2d 913, 914 (Ky. App. 1980), another panel of our court held that "it is the clear intent of the Legislature that a corporation may not defeat venue in an action brought in the court in which its registered office and agent is ***located***." (Emphasis added.)

The annual report provided by First Corbin identified a Lexington address for one of its responsible agents–its Chairman and one of its three directors. There is no doubt Alsip would, and did, bring the summons home to the corporation from his address provided to the Secretary of State. Accordingly, Scott-Gross was entitled to rely upon the information First Corbin provided to the Secretary of State in choosing where to file its complaint for the case herein. Thus, the trial court did not err in denying First Corbin's motion to dismiss Scott-Gross's complaint for improper venue.

## Liability

Next, First Corbin maintains the trial court improperly granted summary judgment on the issue concerning its contractual liability because genuine issues of material fact precluded same. First Corbin asserts it was not bound to the 2010 agreement because it was signed by Kathy Hall of Management Advisors. However, the 2016 agreement was undisputedly signed by Sheila Noe

of First Corbin and expressly incorporated and ratified the 2010 agreement, and was therefore binding.

Even so, First Corbin further claims the 2010 agreement was not properly incorporated into the 2016 agreement. First Corbin cites *Childers & Venters, Inc. v. Sowards*, 460 S.W.2d 343 (Ky. 1970), claiming it and the Uniform Commercial Code ("U.C.C.") require conspicuous reference to an agreement for it to be properly incorporated into another. The *Childers* court specifically held, "[w]e do not, however, construe this to abolish the doctrine of incorporation by reference." *Id.* at 345. In the 2016 agreement at issue herein, the very subject line of the letter reads, "Re: Extension–Scott-Gross Cylinder Agreement of March 19, 2010." The letter then opens with, "[w]e have served your business pursuant to our March 19, 2010 Cylinder Agreement for over six years. We value your business. As discussed, we would like to extend our current agreement." Thus, there can be no doubt that this letter sought to extend the 2010 agreement and appropriately incorporated same through its specific, repeated, and prominent references. Consequently, the trial court did not err in granting partial summary judgment concerning First Corbin's liability under these agreements.[6]

---

[6] First Corbin also claims Paul Scott, Vice President of Scott-Gross, never accepted the 2016 agreement as was required under the 2010 agreement. However, according to his June 23, 2017, affidavit, "[o]n or shortly after December 5, 2016, the fully executed Current Extension Agreement was delivered to me for approval as Vice President of Scott Gross, pursuant to section 11(a) of the original 2010 contact, and I gave said approval at Scott Gross's Lexington office at 1575 Winchester Road, Lexington, Fayette County, Kentucky."

Nevertheless, First Corbin argues Scott-Gross violated the duty of good faith and fair dealing, relieving First Corbin from performance under the contract(s). This argument centers on Scott-Gross's February 17, 2017, demand that First Corbin pay for the missing cylinders. This obligation was one that clearly existed since the 2010 agreement, if not before. The record contains emails discussing joint audits of the nursing homes to determine the quantity of missing cylinders; thus, First Corbin's argument that it was somehow caught off guard or duped into believing it would never have to pay for such cylinders is disingenuous. What is notably absent from the record is any evidence or indication that First Corbin was ever *not* responsible for replacement or payment of missing cylinders. First Corbin's insinuations in this regard are simply insufficient to preclude summary judgment on this issue.

Instead, First Corbin cites to portions of Paul Scott's and Robin Osborne's depositions in which they acknowledge discrepancies in the spreadsheets sent to First Corbin requesting payment for the missing cylinders. While this evinces a genuine dispute as to how much Scott-Gross was owed for its missing cylinders, that issue was voluntarily dismissed prior to the trial court's final judgment and is not properly before our court on appeal.

Next, First Corbin claims Scott-Gross anticipatorily repudiated their contract when it demanded First Corbin pay for the return or replacement of the

cylinders identified through the audit on February 17, 2017.  However, "anticipatory repudiation centers upon an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance."  U.C.C. § 2-610 (1958), Official Comment 1.  "The words or facts alleged to constitute the anticipatory repudiation must be 'unequivocal.'"  *Upton v. Ginn*, 231 S.W.3d 788, 791 (Ky. App. 2007) (quoting *Brownsboro Rd. Rest., Inc. v. Jerrico, Inc.*, 674 S.W.2d 40 (Ky. App. 1984)).  Ironically, the only evidence of anticipatory repudiation in the case herein was that committed by First Corbin, not Scott-Gross.

**Damages**

First Corbin additionally asserts the trial court erred in granting Scott-Gross's request for a protective order, preventing it from discovering its tax returns for the years 2015 through 2018.  The standard of review concerning a trial court's evidentiary rulings is for abuse of discretion.  *Tumey v. Richardson*, 437 S.W.2d 201, 205 (Ky. 1969).  "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound reasonable principles."  *Penner v. Penner*, 411 S.W.3d 775, 779-80 (Ky. App. 2013) (citation omitted).

First Corbin retained an expert witness, Sara A. Ford, Master of Rehabilitation Counseling, to calculate Scott-Gross's contractual lost profits

-10-

damages. Ford reviewed the report of Scott-Gross's expert as well as its monthly revenue and expense report from May 2014 through April 2017. While Ford reported "[e]xamining the tax returns over this period would be the easiest way to determine loss of profits," she was nevertheless able to project Scott-Gross's lost profits with reasonable certainty absent its tax returns. Thus, any error in preventing the discovery of these returns is harmless.

First Corbin's final argument is that the trial court erred by granting Scott-Gross summary judgment on the issue of its damages. However, First Corbin provided an expert report on this issue. "As a general rule, profits which would have been realized if a contract had been performed may be recovered as damages for its breach, provided they are susceptible of being ascertained with reasonable certainty[.]" *Warren Post No. 23, Am. Legion v. Jones*, 302 Ky. 861, 865, 196 S.W.2d 726, 728 (1946); *Kentucky Utils. Co. v. Warren Ellison Cafe*, 231 Ky. 558, 21 S.W.2d 976, 978 (1929). Here, two experts–including one retained by First Corbin–were able to ascertain lost profits due to First Corbin's breach with reasonable certainty. Thus, we cannot say the trial court erred on this issue.[7]

---

[7] First Corbin further asserts that Scott-Gross did not show that it mitigated its damages. It then points out that "if a party introduces evidence that another party has failed properly to mitigate his or her damages, the jury should be given a failure-to-mitigate-damages instruction." *Morgan v. Scott*, 291 S.W.3d 622, 640 (Ky. 2009). However, First Corbin never introduced evidence that Scott-Gross failed to properly mitigate its damages. Consequently, nothing further was required.

**CONCLUSION**

Therefore, and for the foregoing reasons, the orders of the Fayette Circuit Court are AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sarah Tipton Reeves
Wesley R. Tipton
Corbin, Kentucky

BRIEF FOR APPELLEE:

John N. Billings
Christopher P. Farris
Lexington, Kentucky